**GEM CORRUGATED BOX CORPORA-TION and Bilt-Rite Box Corporation, Plaintiffs,**

v.

**MEAD CORPORATION, Mead Containers, Inc. and Gibraltar Corrugated Paper Co., Inc., Defendants.**

United States District Court
S. D. New York.

Nov. 18, 1960.

George Plotkin, New York City, for plaintiffs.

Schwartz & Frohlich, New York City, for Sobar Corrugated Paper Co., Inc. (Gibraltar Corrugated Paper Co., Inc.) Everett A. Frohlich, New York City, of counsel.

PALMIERI, District Judge.

The moving defendant, Sobar Corrugated Paper Company, Inc. (Sobar), sued herein as Gibraltar Corrugated Paper Co., Inc. (Gibraltar), claims that venue has been improperly laid in this district and that this court lacks personal jurisdiction over it. It seeks an order quashing the service of the summons and dismissing the complaint.

Corporate History of Gibraltar

Until March 23, 1959, Gibraltar, a New Jersey corporation, was engaged in the manufacture and sale of corrugated paper cartons and corrugated paper. Its principal place of business was located in North Bergen, New Jersey. Gibraltar solicited orders from plaintiffs and other New York purchasers and made regular deliveries of merchandise in this district.

·On March 23, 1959, Gibraltar amended its certificate of incorporation to change its name to Sobar. Simultaneously with this amendment, all of Sobar's assets were sold to Mead Containers, Inc., a named defendant not yet served in this action. On July 29, 1959, the Secretary of State of the State of New Jersey issued a certificate of filing of consent by stockholders to Sobar's dissolution.

### Notice to Customers

On March 20, 1959, three days prior to its change of name, Gibraltar notified its customers that it was "being acquired by Mead Containers, Inc." and would "operate as a division" of that company. On March 30, 1959, Gibraltar's customers received a similar notice from Mead Containers. Plaintiffs allege that they had no information as to the change of name of Gibraltar or the dissolution of Sobar at any time prior to the institution of this action. Although plaintiffs acknowledge receipt of billings from Mead Containers after the acquisition date, they characterize the customer letters of March 20 and 30, 1959 as deliberately ambiguous and calculated to lead purchasers to believe that the separate operation and identity of Gibraltar would continue.[1] Defendant characterizes these two letters as ordinary public relations correspondence, designed to assure customers that Mead Containers would continue and improve upon the standards of performance set by Gibraltar.

### The Challenged Service

On September 16, 1960 plaintiffs filed their complaint in this district charging Gibraltar, Mead Containers and The Mead Corporation (parent of Mead Containers) with a conspiracy to violate the

antitrust laws. The Marshal for the District of New Jersey served the Gibraltar summons and a copy of the complaint on Sobar's Vice President in North Bergen, New Jersey, on September 28, 1960.[2] In serving the summons outside this district, plaintiffs relied upon the provisions of section 12 of the Clayton Act, 15 U.S.C.A. § 22:

"Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

This section permits extraterritorial service of process upon a corporate defendant in an action arising under the antitrust laws provided that the action is brought in a district where the corporation "transacts business." See Eastman Kodak Co. v. Southern Photo Materials Co., 1927, 273 U.S. 359, 370–374, 47 S.Ct. 400, 71 L.Ed. 684.

### Application of Section 12 of the Clayton Act

Defendant Sobar contends that the application of this special venue and service provision is determined by the situation existing at the time the action is commenced. Accordingly, Sobar claims that its dissolution more than a year before suit was instituted rendered ineffective plaintiffs' attempt to reach it under section 12 of the Clayton Act. Plaintiffs read the provision differently. They urge that the statutory requirement is met if a defendant "transacted business" in the chosen forum at the time

---

1. Defendant has emphasized the point that Mead Containers acquired the assets, not the stock, of Sobar. However, in its customer letter of March 20, 1959, Gibraltar, through its Vice President, William H. Greenberg, the officer served herein, stated that "Gibraltar Corrugated Paper Company, Inc. is being acquired by Mead Containers, Inc.," that the acquisition represented a "new affiliation," and that Gibraltar "look[ed] forward to a continuing fine relationship." Similar statements were made in Mead Containers' letter to Gibraltar's customers, dated March 30, 1959.

2. Sobar remains an entity subject to suit; service was effected at its principal place of business upon an officer who had authority to receive process for the corporation. See N.J.Rev.Stat. §§ 14:13–14, N.J.S.A.

of the alleged violations of the antitrust laws.[3] Under this interpretation, a defendant's withdrawal from the forum prior to the commencement of suit would not affect a plaintiff's right to invoke section 12.

■ In determining whether venue has been properly laid pursuant to section 12, the courts have held that the terms "transact business" refer to a lesser degree of commercial activity than that required to establish the usual jurisdictional concept of "doing business." Shipment of goods to points within the district, coupled with solicitation of orders therein, activities which defendant concededly engaged in prior to dissolution, have been held sufficient to meet the "transacting business" test of section 12. See Eastman Kodak Co. v. Southern Photo Materials Co., supra. While it is clear that section 12 was designed to broaden the choice of forum available in antitrust actions, see Anderson-Friberg, Inc. v. Justin R. Clary & Son, Inc., D.C.S.D.N.Y.1951, 98 F.Supp. 75, 83, nothing in the statute indicates a congressional intent to depart from the usual temporal reference, i. e., the date the complaint is filed with the court. See Sunbury Wire Rope Mfg. Co. v. U. S. Steel Corp., 3 Cir., 1956, 230 F.2d 511; Abrams v. Bendix Home Appliances, Inc., D.C.S.D.N.Y.1951, 96 F.Supp. 3, 5 (the issue is whether defendant transacted business in the forum at the time of the service of process). Therefore I cannot accept as a rule of general application plaintiffs' contention that it is sufficient to show that the acts complained of arose out of defendant's business transactions in the chosen forum prior to the commencement of legal proceedings. But cf. Ross-Bart Port Theatre, Inc. v. Eagle Lion Films, Inc., D.C. E.D.Va.1954, 140 F.Supp. 401.

However, my conclusion in this regard does not detract from plaintiffs' alternative contention that the peculiar set of facts presented here, i. e., the manner in which Sobar accomplished the sale of its assets and the dissolution of its business, support a result which might not be reached in the generality of cases. Cf. Abrams v. Bendix Home Appliances, Inc., supra. Plaintiffs urge that the business which Sobar concededly transacted in this district prior to dissolution and the continuation of that business under the name Gibraltar [4] by Sobar's alleged co-conspirator, Mead Containers, are factors which, taken together, satisfy the requirement that business be transacted in the chosen forum at the time of extraterritorial service.

In determining this issue, I am mindful of the opinion in Bertha Building Corp. v. National Theatres Corp., 2 Cir., 1957, 248 F.2d 833, 836, certiorari denied, 1958, 356 U.S. 936, 78 S.Ct. 777, 2 L.Ed.2d 811, in which the Court of Appeals expressed agreement with the rationale and holding of Judge McGohey in Independent Productions Corp. v. Loew's, Inc., D.C.S.D.N.Y.1957, 148 F. Supp. 460. Judge McGohey rejected the argument that under section 12 of the Clayton Act the mere allegation of conspiracy is sufficient to bring a defendant into the forum where its co-conspirator transacts business. However, he specified as part of his rationale the fact that the corporation upon whose motion he acted "[had] not at any material time carried on * * * any commercial activity [in this district] in pursuit of its corporate objectives." 148 F.Supp. at page 462. Cf. United States v. Scophony Corp., 1947, 333 U.S. 795, 808, 68 S.Ct. 855, 92 L.Ed. 1091; Ross-Bart Port Theatre, Inc. v. Eagle Lion Films, Inc., supra.

3. It is claimed that Gibraltar followed a discriminatory pricing policy in its sales to New York customers. The complaint alleges that plaintiffs' competitors were the beneficiaries of Gibraltar's preferential pricing practices and that plaintiffs, as non-preferred purchasers, were damaged thereby.

4. In addition to the customer letters, plaintiffs note the 1960–61 Manhattan telephone book listing for Gibraltar Corrugated Paper Co., Inc. at the New Jersey address where service was made. The book contains no listing for Sobar. Mead Containers is listed as a Division of Mead Corp. at a New York address.

It appears to me that plaintiffs' alternative contention is entirely consistent with the rationale of Independent Productions Corp. v. Loew's, Inc., supra. Accordingly, I have concluded that plaintiffs' showing of the extent to which defendant transacted business in this forum is sufficient to withstand, at this preliminary stage in the case, the challenges as to venue and service of process now made by defendant.

The motion is, therefore, denied without prejudice to defendant's right to renew its objections with respect to section 12 at trial, upon complete development of the facts and circumstances surrounding the alleged participation by Sobar in violations of the antitrust laws, the dissolution of Sobar and the continuation of its business by Mead Containers, Inc. See Bertha Building Corp. v. National Theatre Corp., supra, 73 Harv. L.Rev. 1567, 1569 (1958); Ross-Bart Port Theatre, Inc. v. Eagle Lion Films, Inc., supra.

So ordered.