**PACIFIC SEAFARERS, INC., et al.,**
**Plaintiffs,**

v.

**PACIFIC FAR EAST LINE et al.,**
**Defendants.**

**Civ. A. No. 3088–66.**

United States District Court
District of Columbia.

June 2, 1969.

Sher & Harris, Robert E. Sher, Coles & Goertner, Marvin J. Coles, Donald D. Webster, Washington, D.C., for plaintiffs.

Kirlin, Campbell & Keating, by Elmer C. Maddy, Lillick, McHose, Wheat, Adams & Charles, R. Frederic Fisher, Frederick M. Rowe, James M. Johnstone, Cleary, Gotlieb, Steen & Hamilton, John K. Mallory, Jr., Richard W. Karrus, James N. Jacobi, Daniel H. Margolis, George F. Galland, Amy Scupi, Foley, Hoog & Eliot, Clarence I. Peterson, Verne W. Vance, Jr., Cahill, Gordon, Reindel & Ohl, Donald J. Mulvihill, Turney, Major, Sherly & Sage, Robert S. Burk, Kominers & Fort, J. Franklin Fort, Washington, D.C., for defendants.

## MEMORANDUM OPINION

GESELL, District Judge.

This is a treble damage action claiming violations of sections 1 and 2 of the Sherman Act. The general nature of the suit and prior action on a motion to dismiss are fully covered in an opinion in this matter decided September 30, 1968, by the United States Court of Ap-

peals for this Circuit, Pacific Seafarers, Inc. v. Pacific Far East Line, Inc., 131 U.S.App.D.C. 226, 404 F.2d 804 (1968). At least one defendant has requested a jury trial and while a number of answers are yet to be filed the Court is proceeding on the assumption that this is a jury case.

■ The motions before the Court, which have been briefed and argued, raise questions of service and venue and seek dismissal as to three of the five plaintiffs for lack of standing to sue under the antitrust laws. Since these motions were sent to the Court as Motions Judge in the ordinary course, no request for assignment to a single judge having been made, the motions will be resolved. However, the Court *sua sponte* has requested the Chief Judge to assign all further proceedings in this case to another judge for all purposes and counsel are requested to cooperate to this end. There is to be no further discovery except as it shall be approved by the judge to whom the case is assigned. In this jurisdiction where civil cases are handled on a master calendar basis, the preferable procedure in a complicated antitrust action is for the parties to request the Chief Judge to assign the case to a single judge for all purposes promptly after the action is filed. Only in this fashion can duplication of judicial effort be avoided and preliminary matters, such as those raised by some of these motions, be scheduled for efficient disposition after appropriate factual discovery has been conducted.

The service and venue motions will be considered first.

### ATLANTIC AND GULF AMERICAN FLAG BERTH* OPERATORS and WEST COAST AMERICAN FLAG BERTH OPERATORS

■ Two of the defendants, known as AGAFBO and WCAFBO, are steamship conferences based in New York City and organized in the form of voluntary associations. They each move to quash service of process on the ground that they are voluntary associations and cannot be served outside of this jurisdiction since section 12 of the Clayton Act, considered in the light of Rule 4(f) of the Federal Rules of Civil Procedure, permits service outside the jurisdiction of the Court only upon corporations. These motions are clearly well taken and service will be quashed. McManus v. Tato, 184 F.Supp. 958 (S.D.N.Y.1959).

■ Each of these defendants also urges that the case be dismissed for improper venue. Normally such a dismissal would not be proper, but under the circumstances of this case the motions will be granted. Following the argument, certified copies of letters dated October 23, 1968, from the Chief, Office of Carrier Agreements of the Federal Maritime Commission, were submitted to the Court. Each of these letters states that the agreements under which AGAFBO and WCAFBO were organized and operating were cancelled effective October 23, 1968, pursuant to section 15 of the Shipping Act of 1916. Accordingly, it does not appear that venue will ever exist here and it will serve the interests of this case to resolve the matter at this time. The files of these organizations, if they still exist, are of course open to appropriate discovery and former personnel may be deposed.

### AMERICAN UNION TRANSPORT, INC.; CENTRAL GULF STEAMSHIP CORPORATION and PRUDENTIAL LINES, INC.

American Union Transport, Inc. (hereafter AUT) also moves under Rule 12(b) of the Federal Rules of Civil Procedure to dismiss the complaint for improper venue and to quash service. The parties have stipulated that the disposition of this motion shall govern the disposition of similar motions filed by Central Gulf Steamship Corporation and Prudential Lines, Inc. The Court will deny the motion and holds that venue is proper and service should not be quashed.

■ AUT is a New York corporation with no offices or employees in the District of Columbia. Venue rests on the relations between AUT and Consolidated Steamship Agencies (hereafter Consolidated). Service was had upon the principal partner of Consolidated which has offices in Washington, D. C. A deposition taken by plaintiffs of N. B. Borden, the principal partner of Consolidated, covers in detail the numerous and varied services which Consolidated has performed for AUT over the last ten or eleven years here in the District of Columbia and the substantial monetary significance of such services. Without considering the matter in detail, it is apparent that Consolidated has negotiated and serviced contracts for AUT; Consolidated has negotiated the leasing of a vessel, handled claims before the Navy, attended conference meetings, participated in rate negotiations, collected money, dealt with foreign embassies, etc., all on behalf of AUT. It has received in the years 1961–1966, inclusive, substantial sums from AUT for these services. Thus, AUT transacts business in the District of Columbia within the meaning of section 12 of the Clayton Act, has an agent in the District of Columbia responsible for the conduct of business in the District, and both service and venue are proper. The decisions on which AUT relies, such as United States v. Scophony Corp., 333 U.S. 795, 68 S.Ct. 855, 92 L. Ed. 1091 (1948) and Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927), do not support the motion on the facts of this case. The contacts with the District are not as incidental or as limited as AUT contends and no purpose is served by discussing each of the cases cited on their own specific facts. Here there is a long-standing, substantial, broad relationship sufficient to meet the requirements of venue and support service.

## STOCKARD SHIPPING CO., INC.

Stockard Shipping Co., Inc. has moved to quash service. The company has no office, agent or representative in the District of Columbia. Service was made on Consolidated under the mistaken assumption that Consolidated was acting as agent and representative for Stockard. Consolidated had had no contact with Stockard for four or five years. Plaintiffs concede the service is improper and service will be quashed.

## GREAT LAKES BENGAL LINES, INC.; MID-AMERICA STEAM-SHIP CORP.; and J. J. GEORGEL-IS, INC.

The remaining motions are cast in various forms seeking to dismiss from the action three of the five named plaintiffs, that is, Great Lakes Bengal Lines, Inc., Mid-America Steamship Corp. and J. J. Georgelis, Inc., for lack of standing to sue under the antitrust laws. The thrust of these motions is that these three plaintiffs are mere bystanders, not targets of the alleged conspiracy, and that they seek to recover damages because of alleged injury so remote that they have no standing to participate in this action. There has been no discovery on these issues and the motions are tendered on the complaint. The complaint alleges a concerted effort by the defendants to drive Pacific Seafarers, Inc. and Seafarers, Inc. out of business. Two of the challenged plaintiffs, who operate shipping businesses out of the same address as the two Seafarers companies, are alleged to have standing by reason of facts set forth in paragraph 47 of the complaint:

At all times material herein, the financial well-being of PSI and Seafarers was the keystone to the financial well-being of the other plaintiffs. PSI, Seafarers, Great Lakes Bengal and Mid-America chartered, leased, and otherwise exchanged vessels among themselves; they made loans and pledged credit among themselves and with others in order to finance their respective business transactions. When PSI and Seafarers were forced

out of business, the other plaintiffs, including *J. J. Georgelis, Inc.*, were likewise forced out of business as a result thereof.

The other challenged plaintiff, Georgelis, is alleged to have standing by reason of the fact that it served as managing agent for the other four named plaintiffs.

After hearing argument by counsel as to the sufficiency of these allegations, which are indeed quite general and indefinite in character, the Court determined it was not appropriate to resolve the standing issue on the face of the complaint. The Court invoked its powers under Rule 16 of the Federal Rules of Civil Procedure and requested plaintiffs to submit a statement giving a fuller indication of the nature of the relationship among the five plaintiffs and the extent of their business dealings claimed to have been affected by the alleged conspiracy. In response to this request plaintiffs supplied the additional appended information, expanding the somewhat cryptic allegations of the complaint to which the standing motions were addressed. This offer of proof places the contentions of the parties in a somewhat different light and permits a more precise consideration of the authorities on which plaintiffs and defendants rely.

▮ It must be recognized that these motions to dismiss for lack of standing are made on the pleadings, without benefit of discovery and indeed before any extensive pretrial proceedings have taken place. The pleadings, particularly in an antitrust action of this kind, should be construed in favor of the plaintiffs. Private parties involved in treble damage antitrust actions have tended to expect that complaints replete with evidentiary and argumentative material typical of many Government antitrust actions should be followed. This type of pleading is surplusage and performs no proper function under the Federal Rules of Civil Procedure. These rules do not differentiate antitrust actions from any other type of civil proceeding and require only notice pleadings. *See* Conley v. Gibson, 355 U. S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

▮▮ In dealing with these motions the Court is not required to make any determination as to whether or not plaintiffs are likely to succeed. It is merely a question of whether the pleadings present a triable antitrust issue and allege injury to the plaintiffs which is proximately caused by defendants' conduct and not of such a remote, indirect and incidental character as to warrant elimination of the issues from the scope of the proceedings at the outset. Here it is asserted that defendants' conduct forced out of business a group of companies engaged in the same general line of business, having the same shareholders, operating out of the same business address, whose business affairs were closely interrelated and intertwined. This is sufficient, under cases cited by plaintiffs, to defeat the motions. *See* Perkins v. Standard Oil Co., 395 U.S. 642, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969); Knuth v. Erie-Crawford Dairy Co-op. Assoc., 395 F.2d 420 (3rd Cir.1968); Dailey v. Quality School Plan, Inc., 380 F.2d 484 (5th Cir.1967); South Carolina Council of Milk Producers, Inc. v. Newton, 360 F.2d 414 (4th Cir.1966), cert. denied, 385 U.S. 934, 87 S.Ct. 295, 17 L.Ed.2d 215 (1966); Vines v. General Outdoor Advertising Co., 171 F.2d 487 (2nd Cir.1948); Roseland v. Phister Mfg. Co., 125 F.2d 417, 139 A.L.R. 1013 (7th Cir.1942).

In so ruling the Court is forced to recognize that it would be extremely wasteful for this action to proceed without certain superficially appropriate plaintiffs only to find that as intricate facts are developed there proves to be sufficient substance to the claims to warrant their consideration by a jury, thus necessitating another trial. It may well be

that in the intensive pretrial proceedings which should antecede any presentation of this case to a jury, the issues can be narrowed and possibly some plaintiffs dismissed from the action at some stage, but there is not before the Court on these motions a sufficient factual basis to warrant such decisive action at this time. The standing motions are denied.

Counsel shall submit an appropriate order within ten days.

## APPENDIX

### PLAINTIFFS' STATEMENT SUBMITTED PURSUANT TO REQUEST OF COURT AT ORAL ARGUMENT, MAY 21, 1969.

Plaintiffs submit this statement pursuant to the request of the Court made at the oral argument, May 21, 1969, of defendants' motions to dismiss the complaint as to plaintiffs Great Lakes Bengal Lines, Inc. (Great Lakes Bengal), Mid-America Steamship Corp. (Mid-America), and J. J. Georgelis, Inc.

At the trial of this case, plaintiffs will show, among other things, the following with respect to Great Lakes Bengal, Mid-America, and J. J. Georgelis, Inc.

1. All the capital stock of said three plaintiffs and of plaintiff Pacific Seafarers, Inc. (PSI) is owned by the same individuals. Ownership and control of the remaining plaintiff, Seafarers, Inc. (Seafarers) is vested substantially in the same individuals or in members of their families. The five plaintiff companies had, during the period covered by the complaint, a very close and interdependent relationship.

2. J. J. Georgelis, Inc. at all times material to this action served as managing agency for the other plaintiffs. As managing agency, J. J. Georgelis, Inc. performed the following functions, among others, for and on behalf of the other plaintiffs:

(a) With respect to vessels owned by the plaintiffs, J. J. Georgelis, Inc.:

(1) Provided husbanding functions, e.g., arranging for crews, arranging for fuel, handling insurance and insurance claims, provisioning the vessels, handling maintenance and repair services, furnishing administrative and accounting services.

(2) Provided chartering services.

(3) Provided liner agency functions, e.g., soliciting and booking cargo, issuing bills of lading and preparing manifests, arranging scheduling, appointing out-port agents, furnishing administrative and accounting services, arranging stevedoring.

(b) With respect to vessels time-chartered by the plaintiffs, J. J. Georgelis, Inc, performed the following functions, among others: it supplied managing services for the charterer as needed to perform the voyage requirements, arranged for fuel, arranged for the delivery, inspection, and survey of the vessels, appointed out-port agents, arranged for stevedores if required, and arranged for employment (paying voyages) for the vessels.

3. J. J. Georgelis, Inc. was paid for the services it rendered on a fee basis, a stated number of dollars per day per vessel for which it served as managing agent. Its principal clients for which it performed the foregoing services, and therefore the principal sources of revenue to J. J. Georgelis, Inc., were PSI and Seafarers. Without the income from vessels owned or operated by PSI and Seafarers, J. J. Georgelis, Inc. was unable to continue in business. The defendants' activities that forced PSI and Seafarers out of business therefore resulted in the forcing of J. J. Georgelis, Inc. out of business as well.

4. Great Lakes Bengal and Mid-America were both substantially dependent upon PSI and upon J. J. Georgelis, Inc. Great Lakes Bengal and Mid-America both depended upon PSI for credit

and as a guarantor of their credit. They also depended upon the management services furnished by J. J. Georgelis, Inc. which they were unable to obtain after J. J. Georgelis, Inc. was forced out of business.

5. Great Lakes Bengal operated out of Great Lakes ports. Because of the closing of those ports during the winter season, it was important for Great Lakes Bengal to have other employment for its vessels, whether owned or chartered, during that season. The close relationship between Great Lakes Bengal and PSI gave the former company the opportunity to employ its vessels, owned or chartered, in warm water ports during the winter season.

6. The profitability of Great Lakes Bengal voyages to the Far East was maximized by the ability of Great Lakes Bengal, by virtue of its close relationship with PSI, to turn its vessels over to PSI, either by charter or sublease, for use in the Far East interport trade, thus minimizing the total ballast time of the vessels in relation to the total cargo carrying time.

7. Great Lakes Bengal also looked to PSI and depended upon it as a ready source of vessels available to Great Lakes Bengal. These included both vessels owned by PSI and chartered to Great Lakes Bengal and others that could be time-chartered by PSI and sub-let to Great Lakes Bengal.

8. Mid-America owned a vessel which was mortgaged, and PSI was Mid-America's guarantor on the mortgage. Mid-America chartered the vessel to PSI, which used it in the Far East inter-port trade. The vessel was being used by PSI in this trade when defendants' activities set forth in the complaint forced PSI out of business. The results were that PSI was unable to meet the charter payments to Mid-America, neither Mid-America nor PSI was able to meet the mortgage payments, the mortgage was foreclosed, and the vessel was sold at foreclosure sale and lost to Mid-America, thus effectively putting it out of business.

Dated: June 2, 1969.

Respectfully submitted.

Robert E. Sher
Abraham J. Harris
  SHER & HARRIS
  888-17th Street, N.W.
  Washington, D. C. 20006

Marvin J. Coles
  COLES & GOERTNER
  1000 Connecticut Avenue
  Washington, D. C. 20036
  Attorneys for Plaintiffs