**CALIFORNIA CLIPPERS, INC.,**
Plaintiff,

v.

**UNITED STATES SOCCER FOOTBALL ASSOCIATION, the International Games Committee of said defendant United States Soccer Football Association, North American Soccer League, California Soccer Football Association, a corporation, Philip Woosnam, James McGuire, Clive Toye, Frank Woods, Joseph Flamhaft, Matthew J. Boxer, and Diogenes Cordero, Defendants.**

Civ. No. 51833.

United States District Court,
N. D. California.

July 2, 1970.

William M. Brinton, Godfrey L. Munter, Jr., Kelso, Cotton, Seligman & Ray, San Francisco, Cal., for plaintiff.

Philip E. Diamond, Edgar B. Washburn, Landels, Ripley, Gregory & Diamond, Robert S. Cathcart, Bledsoe, Smith, Cathcart, Johnson & Rogers, San Francisco, Cal., Hamilton Carothers, Covington & Burling, Washington, D. C., for defendants.

Amended Order Determining Motions Re Service of Process and Venue

GERALD S. LEVIN, District Judge.

This action is before the court on the motion of Plaintiff California Clippers, Inc. [Clippers] to amend the *Order Determining Motions Re Service of Process and Venue* filed herein on March 16, 1970. Said *Order* determined motions of defendant North American Soccer League [NASL] and individual defendants Philip Woosnam, Clive Toye, James McGuire, and Joseph Flamhaft, to quash service of summons and dismiss the complaint as to them for improper venue.

Clippers is a California corporation which presents exhibitions of professional soccer by maintaining a team called the California Clippers. Clippers has filed a complaint charging the several defendants with violations of the antitrust laws through their alleged monopolistic control and restraint of professional soccer in the United States and more specifically in California.

Clippers alleges that the following structure exists which controls professional soccer in the United States and throughout numerous other countries. At the top is the Federation Internationale de Football Association [FIFA], an unincorporated association with its principal place of business in Switzerland. The membership of FIFA consists of "National Associations" in various countries, and through this hierarchical structure FIFA controls professional soccer exhibitions worldwide. Defendant United States Soccer Football Association [USSFA], a New York corporation, is such a "National Association," controlling professional soccer ex-

hibitions throughout the United States. Defendants McGuire and Flamhaft are chairmen of USSFA committee.

Defendant NASL is an unincorporated association of soccer exhibitors throughout North America. NASL is affiliated with, pays dues to, and registers its players with USSFA. NASL, in conjunction with USSFA, is alleged to control the exhibition of professional soccer in the United States. Defendants Woosnam and Toye are, respectively, the Executive Director and a Director of NASL.

Defendant California Football Association, Inc., operates the California Soccer Football Association [CSFA]. CSFA is affiliated with USSFA in the same manner as is NASL, and it is alleged to control exhibitions of professional soccer in Northern California. Defendant Southern California Soccer Football Association [SCSFA] is a California corporation likewise affiliated with USSFA and is alleged to be in control of exhibitions of professional soccer in Southern California.

In April of 1968 USSFA and NASL executed an agreement which brought NASL into existence and gave it the right to sponsor "Tour Games," but only upon the prior approval of a majority of a committee consisting of two representatives of NASL and two representatives of USSFA. The organization of NASL included sixteen member teams in various cities throughout the United States and a seventeenth member team in Canada. Among the sixteen American teams were those in the cities of Oakland, Los Angeles, and San Diego, California. At the end of 1968 twelve teams, including all three of those situated in California, voluntarily terminated their membership in NASL. As a result NASL had only five member teams during 1969, none of them situated in California.

Early in 1969 Clippers planned and began a program of playing soccer exhibitions with well-known foreign teams. This program stemmed from Clippers' alleged inability to be admitted to NASL on the same terms as NASL's other member teams. On or about December 12, 1969, Clippers became a member of CSFA. Clippers thereafter requested approval of its plans from USSFA, but despite the expenditure of much time, money, and effort, USSFA refused to approve certain of the planned exhibitions. Clippers proceeded to play these exhibitions anyway. As a result Clippers alleges that it has been and will be subject to worldwide sanctions in the form of suspensions and blacklisting for not complying with USSFA requirements.

Under FIFA rules before any player can play for a professional soccer team, he must first be registered with the "National Association" of his country. Any player who does not so register may be suspended or blacklisted, as may be any other personnel of an offending team. FIFA and the other defendants have allegedly used their monopoly power to impose economic sanctions on Clippers and deny it the right to play professional soccer exhibitions. Clippers has been required to secure approval for further games under procedures which it contends are unreasonable and with which it cannot comply.

Pursuant to the April, 1968, agreement above referred to, NASL has allegedly denied Clippers the right to participate on equal operating terms with its other member teams because Clippers cannot obtain from USSFA the requisite prior approval to play foreign teams. Clippers contends that as a result it has been subjected to economic and other sanctions in violation of law.

### I. *Motions of NASL*

#### A. *To Quash Service*

The propriety of service of process on NASL begins with Clayton Act, § 12, 15 U.S.C. § 22 and the relevant provisions of Fed.R.Civ.P. Rule 4 including reference thereunder to applicable state law.

Clayton Act § 12 provides as follows:

Any suit, action, or proceeding under the antitrust laws against a *corporation* may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found. (Emphasis added.)

■ NASL is, however, an unincorporated association, not a corporation, so Clayton Act § 12 is an inapplicable by its own terms to provide for service of process against NASL in this action. Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 875 (3d Cir. 1944); Thill Securities Corporation v. New York Stock Exchange, 283 F.Supp. 239, 242 (E.D.Wis.1968); McManus v. Tato, 184 F.Supp. 958, 959 (S.D.N.Y.1959); Pacific Seafarers, Inc. v. Pacific Far East Line, 48 F.R.D. 347, 349 (D.C.D.C.1969).

Fed.R.Civ.P. Rule 4(f) will also not suffice to authorize service of process in this action against NASL. Fed.R.Civ.P. Rule 4(f) provides in pertinent part:

All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state.

■ NASL is not licensed to do business in California, nor does it have an office in California, nor does it sponsor a professional soccer team in California, nor does it have an agent for service of process in California, hence service attempted to be made upon NASL by serving a member soccer team thereof in some state other than California would be ineffective under Fed.R.Civ.P. Rule 4(f) since not made within the territorial limits of the state—California—in which this district court is held. Service would therefore be proper under Fed.R.Civ.P. Rule 4(f) only if "author-

ized by a statute of the United States or by these rules." Clayton Act § 12 will not provide such authorization since it is inapplicable for the reasons noted above. The Federal Rules of Civil Procedure do authorize such service on a non-resident unincorporated association, insofar as Fed.R.Civ.P. Rule 4(f) permits reference to Fed.R.Civ.P. Rule 4(e) which in turn incorporates applicable state law.

Fed.R.Civ.P. Rule 4(e) provides in pertinent part:

Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons * * * upon a party not an inhabitant of or found within the state * * * service may * * be made under the circumstances and in the manner prescribed in the statute or rule.

■ In the instant case there is a California statute which would accommodate service on NASL, namely Cal.C.C.P. § 411(2.1), which section deals with service on unincorporated associations. Cal.C.C.P. § 411(2.1) (c) provides as follows:

If no person has been designated as agent for service of process as provided in Section 2403 of the Corporations Code or if the person so designated cannot be found at his address as specified in the index referred to in Section 24004 of the Corporations Code, and if no person listed in subdivision (a) or (b), as the case may be, can be found within the state after diligent search, in the manner provided by Section 24007 of the Corporations Code.

Accordingly, service upon NASL would be proper under Fed.R.Civ.P. Rule 4(e) and Cal.C.C.P. § 411(2.1) (c) if the requirements of Cal.Corp.C. § 24007 are met. Cal.Corp.C. § 24007 provides as follows:

If designation of an agent for the purpose of service of process has not been made as provided in Section 24003, or if the agent designated can-

not with due diligence be found at the address specified in the index referred to in Section 24004 for personal delivery of the process, and it is shown by affidavit to the satisfaction of a court or judge that personal service of process against an unincorporated association cannot be made with the exercise of due diligence upon an officer or agent referred to in subdivision 2.1 of Section 411 of the Code of Civil Procedure, the court or judge may make an order that service be made upon the unincorporated association by delivery of a copy of the process to any one or more of the association's members designated in the order and by mailing a copy of the process to the association at its last known address. Service in this manner constitutes personal service upon the unincorporated association.

Clippers satisfied the requirements of Section 24007 when it obtained an ex parte order of this court on November 12, 1969, which authorized "that service be made upon the unincorporated association by delivery of a copy of the process" to the Atlanta Chiefs, Inc., a member team of NASL and "by mailing a copy of the process to the association at its last known address." Clippers subsequently made service upon the Atlanta Chiefs by delivery of a copy of process and mailed a copy of said process to the last known address of NASL.

By thus meeting the requirements of the triumvirate statutory scheme of Fed. R.Civ.P. Rule 4(e), Cal.C.C.P. § 411 (2.1) (c), and Cal.Corp.C. § 24007, Clippers effected valid service of process upon NASL.

### B. To Dismiss Complaint for Improper Venue

NASL contends that even if service of process were validly made on it, the complaint must nonetheless be dismissed as to it because venue has been improperly laid.

The first question raised here concerns the applicability of the general statutory venue provisions of 28 U.S.C. § 1391. Following the decision of the Supreme Court in Pure Oil Co. v. Suarez, 384 U. S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966), it appears to be the accepted rule that the general venue provisions of 28 U.S.C. § 1391 apply to antitrust actions and supplement the special venue provisions of the Clayton Act.[1] The only applicable portion of 28 U.S.C. § 1391 is subsection (b) thereof, which reads as follows:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, *or in which the claim arose*, except as otherwise provided by law. (Emphasis added.)

Clippers argues that the 1966 amendment to 28 U.S.C. § 1391(b) which added the words "or in which the claim arose" to the statute will accommodate the laying of venue against NASL in this judicial district because this district is where Clippers has been "injured," hence this is the district where its "claim arose."

Relatively few cases have discussed the interpretation of 28 U.S.C. § 1391(b) to antitrust cases in light of the 1966 amendment thereto, but what authority

1. ABC Great States, Inc. v. Globe Ticket Company, 304 F.Supp. 1052, 1059 (N.D. Ill.1969) ; Adams Dairy Company v. National Dairy Products Corp., 293 F. Supp. 1135, 1141 (W.D.Mo.1968) ; Philadelphia Hous. Auth. v. American Radiator & S. San. Corp., 291 F.Supp. 252, 259 (E.D.Pa.1968) ; Edward J. Moriarty & Co., v. General Tire &. Rubber Co., 289 F.Supp. 381, 387 (S.D.Ohio 1967) ; Hawkins v. National Basketball Association, 288 F.Supp. 614, 620 (W.D.Pa.1968) ;

School Dist. of Philadelphia v. Harper & Row Publishers, Inc., 267 F.Supp. 1006, 1009 (E.D.Pa.1967) ; State of New York v. Morton Salt Company, 266 F.Supp. 570, 576 (E.D.Pa.1967). *But see* Albert Levine Associates v. Bertoni & Cotti, 309 F.Supp. 456, 460–461 (S.D.N.Y.1970) ; State of Illinois v. Harper & Row Publishers, Inc., 308 F.Supp. 1207, 1211 (N. D.Ill.1969). *Cf.* Bruns, Nordeman & Co. v. American Bank & Trust Co., 394 F. 2d 300, 303 (2d Cir. 1968).

there is stands contrary to the position asserted by Clippers.

The most thorough approach to the problem to date appears in the well-written opinion of Judge John W. Lord in Philadelphia Hous. Auth., *supra*, 291 F. Supp. at 259–261. The plaintiffs there argued that a claim arises in private antitrust actions in the district where the injury occurs, analogizing the action to one sounding in tort, and cited as their authority the case of Rosen v. Savant Instruments, Inc., 264 F.Supp. 232 (E.D.N.Y.1967). Judge Lord rejected the tort approach of *Rosen* (a wrongful death action arising under diversity of citizenship jurisdiction), noting that,

> While it may be well to find that a *tort* claim arises in the jurisdiction where the injury occurs, antitrust actions are not susceptible to such simplistic rationale. 291 F.Supp. at 260. (Emphasis in original.)

Judge Lord then proposed an alternative approach to determining "where the claim arose," namely a test based on the "weight of contacts" involved in the case.

> It is submitted that "where the claim arose" should be dependent upon where the contacts weigh most heavily. A "weight of the contacts" test would enable venue to exist in a district where the injury occurred, if significant sales causing substantial injury were made to plaintiffs there by defendants. If some other overt act pursuant to the conspiratorial meetings took place in a district and it was a significant and substantial element of the offense, then venue would lie in that district. Id. at 260–261.

Judge Lord reaffirmed this approach in Philadelphia Hous. A. v. American Radiator & S. San. Corp., 309 F.Supp. 1053, 1056–1057 (E.D.Pa.1969), and Judge Lord's lead has also been followed in the recent case of ABC Great States, Inc. v. Globe Ticket Company, 310 F. Supp. 739, 742–743 (N.D.Ill.1970).

Applying this "weight of contacts" test to the instant action, we find several contacts of significance with this as well as other judicial districts. At least the following contacts exist in this, the Northern District of California: Clippers does business here and presumably would play all or most of the soccer exhibitions here which it claims are being denied it; the April, 1968, agreement which brought NASL into existence was executed here; NASL did in the past have at least three member teams operating in California. On the other hand, several significant contacts have occurred outside this district: NASL has its sole office in Atlanta, Georgia, and the International Games Committee of US SAF is in existence under the laws of New York and does business only in New York.

■ In light of the above and, although the matter is not free from doubt, we conclude that the "weight of the contacts" favors laying venue against NASL in this district under 28 U.S.C. § 1391(b).

■ In addition, venue in this district is supportable under Clayton Act § 4, 15 U.S.C. § 15, which provides that the plaintiff in an antitrust action may sue therefor,

> [I]n any district court of the United States in the district in which the defendant resides or is found or has an agent * * *.

This provision determines venue under the antitrust laws as to unincorporated associations. Courtesy Chevrolet, Inc. v. Tennessee Walking Horse Breeders' and Exhibitors' Ass'n, 344 F.2d 860, 863 (9th Cir. 1965); Riss & Company v. Association of Western Railways, 1959 F.Supp. 288 (D.C.D.C.1958), rev'd as to certain defendants, 112 U.S.App.D.C. 49, 299 F.2d 133 (1960). See also McManus, *supra*, 184 F.Supp. at 959.

An unincorporated association "resides" in all those judicial districts in which it is doing business. Rutland Railway Corp. v. Brotherhood of Loco-

motive Eng., 307 F.2d 21, 29 (2d Cir. 1962), cert. den., 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963). See also Denver & R.G.W.R. Co. v. Brotherhood of R.R. Trainmen, 387 U.S. 556, 562, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967); Sperry Products v. Association of American R.R., 132 F.2d 408, 411 (2d Cir. 1942); Thill Securities Corporation, *supra*, 283 F.Supp. at 245; 1 Moore's Federal Practice ¶0.142 [5.–4] at 1507; Comment, "Federal Court Venue: Residence of an Unincorporated Association," 33 Tenn.L.Rev. 507, 509 (1966); Note, "Access of the Unincorporated Association to the Federal Courts: Venue and Diversity Restrictions," 39 St.John's L.Rev. 353, 354 (1965). What constitutes doing business must be decided on the particular facts of each case. Aro Manufacturing Co. v. Automobile Body Research Corp., 352 F.2d 400, 403 (1st Cir. 1965).

■ We regard NASL's activities in California as sufficient to find that it was doing business so as to "reside" in California within the meaning of Clayton Act § 4.[2] The business which NASL did in California consisted of such activities as having an office in San Francisco, California, beginning in April 1968; entering into the April, 1968, agreement which set up NASL and outlined the structure for the "Tour Games"; and most obviously the constant contracts occurring through the presence of three professional soccer teams in California, all of which were actively engaged in presenting soccer exhibitions. The number and sufficiency of these activities is such that the due process tenets of fair play and substantial justice have been met here in subjecting NASL to suit in this district.

■ Such activities would also be sufficient to say that NASL was "found" in this district within the meaning of Clayton Act § 4. "Found" has been defined in this context to mean that the defendant must be present within the district in the sense that it is involved in continuous local business. Philadelphia Hous. Auth., *supra*, 291 F.Supp. at 255; Stern Fish Co., *supra*, 254 F.Supp. at 153; Goldlawr, Incorporated v. Shubert, 1969 F.Supp. 677, 681 (E.D. Pa.1958), aff'd, 276 F.2d 614 (3d Cir. 1960), rev'd on other grounds, 369 U.S.

2. Although Clayton Act § 4 is phrased in the present tense, leading several courts to conclude that the defendant(s) must reside or be found in the district of suit at the time suit is brought, the Ninth Circuit and some other courts and commentators have reached a contrary position, finding venue, to be determined as of the time the cause of action accrued. Compare Hawkins, *supra*, 288 F.Supp. at 615; Herpst v. S. B. I. Liquidating Corporation, 279 F.Supp. 928, 931 (E.D. Pa.1968); Stern Fish Co. v. Century Seafoods, Inc., 254 F.Supp. 151, 154 (E.D.Pa.1966); United Industrial Corp. v. Nuclear Corp. of America, 237 F.Supp. 971, 979 (D.Del.1964); Gem Corrugated Box Corporation v. Mead Corporation, 189 F.Supp. 584, 586 (S.D.N.Y.1960); K. J. Schwartzbaum, Inc. v. Evans, Inc., 44 F.R.D. 589, 591 (S.D.N.Y.1968); Dixie Carriers, Inc. v. National Maritime Union of America, 35 F.R.D. 365, 370 (S.D. Tex.1964), with Eastland Construction Co. v. Keasbey and Mattison Co., 358 F.2d 777, 780 (9th Cir. 1966); ABC Great States, Inc., *supra*, 304 F.Supp. at 1054; Adams Dairy Company, *supra*,

293 F.Supp. at 1140; Bergeron v. Sabine Dredging and Construction Company, 281 F.Supp. 223, 227 (W.D.La.1968); Ward v. Island Creek Fuel & Transportation Company, 261 F.Supp. 810, 812–813 (N.D.W.Va.1966); Ross-Bart Port Theatre v. Eagle Lion Films, 140 F.Supp. 401, 402 (E.D.Va.1954); Note, "Antitrust Venue: Transacting Business under the Clayton Act," 55 Geo.L.J. 1066, 1073 (1967); Recent Developments, "Antitrust Venue," 65 Mich.L.Rev. 995, 996 (1967); Comment, "Venue: Then or Now? Section 22 of the Sherman Act," U.Pa.L.Rev. 1007 passim. We follow, naturally, that rule sanctioned by the Ninth Circuit and the latter group of authorities.

It makes good sense that a party cannot avoid liability merely by absenting itself from the jurisdiction after having taken advantage of its laws and having done business there; a party cannot "hit and run." See United States v. Scophony Corp., 333 U.S. 795, 808, 68 S.Ct. 855, 92 L.Ed. 1091 (1948); Brenner v. Rubin, 240 F.Supp. 467, 469 (D. Mass.1965).

463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). Compare American Football League v. National Football League, 27 F.R.D. 264, 267 (D.Md.1961).

## II. *Motions of Woosnam, Toye, McGuire, and Flamhaft*

### A. *To Quash Service*

Defendants Woosnam and Toye are both residents of Georgia and are respectively the Executive Director and Director of Administration and Information of NASL. Defendants McGuire and Flamhaft are both residents of New York and are respectively Chairman of USSAF's International Games Committee and International Players Selection Committee and Chairman of its Rules and Revisions Committee. McGuire is a past president of USSAF and Flamhaft is a past officer and at present General Counsel for USSAF.

A summons and complaint in this action were allegedly served on Woosnam and Toye through delivery of same to Toye at the office of NASL in Atlanta, Georgia. A summons and complaint were allegedly served on McGuire and Flamhaft in New York, New York.

 Insofar as Clippers seeks to uphold service of process on these individual defendants, the service of process provision of Clayton Act § 12 is inapplicable, since it is directed only at corporations, not individuals. Rohlfing v. Cat's Paw Rubber Co., 99 F.Supp. 886, 893 (N.D.Ill.1951); 2 Toulmin's Antitrust Laws § 24.6 at 157. Furthermore, no other general statutory provision covers such extraterritorial service on individuals as is contemplated by Fed.R. Civ.P. Rules 4(e) and 4(f). Fed.R. Civ.P. Rule 4(d) will not accommodate service on these individual defendants since its requirements have not been complied with. None of the individual defendants has been served within the state of suit (California) and at their dwelling house(s) as required by Fed. R.Civ.P.Rule 4(d). *See* E. Timberlake, Federal Treble Damage Antitrust Actions § 5.17 at 59 (1965).

Another possibility for valid service on these individual defendants would be under authority of applicable California statutes insofar as they are incorporated as a "statute of the state" within the meaning of Fed.R.Civ.P. Rule 4(e). Although this Rule permits extraterritorial service on individuals where a statute of the state in which the district court is held so provides, no such California statute is presently in force which would permit service on these individual defendants under the circumstances of the instant action.

The group of California statutes which authorize service on individuals, Cal. C.C.P. §§ 412, 413 and 417, will not accommodate service here because these defendants must have been residents of California at certain specified times in order for service to be effectively made under Cal.C.C.P. § 417. Since these individual defendants have not been residents of California *at any time*, they cannot be served under authority of the above California statutes. See Martens v. Winder, 341 F.2d 197, 199 (9th Cir. 1965), cert. den., 382 U.S. 937, 86 S.Ct. 391, 15 L.Ed.2d 349 (1965).

Clippers argues, also, that service can be made (and venue properly laid) as to these defendants under the co-conspirator theory. This theory analogizes the civil antitrust conspiracy to other such legally recognized conspiracies under which each participating conspirator is deemed to be the agent of every other conspirator for all purposes relating to the conspiracy and in furtherance thereof. In this manner venue can be asserted over a non-resident defendant and process served pursuant thereto, where the defendant would not otherwise be amenable to the venue sought to be laid or the process to be served, merely by alleging that the defendant is engaged in a conspiracy with a defendant who is amenable to venue and service within the district of suit. The co-conspirator theory as applied to the antitrust field, had its genesis in Giusti v. Pyrotechnic Industries, Inc., 156 F.2d 351 (9th Cir. 1946), cert. den., Triumph Explosives v. Giusti,

329 U.S. 787, 67 S.Ct. 355, 91 L.Ed. 675 (1946). In *Giusti,* plaintiff brought an antitrust action against Triumph, a Delaware corporation, which was itself an association of corporations which manufactured fireworks, all of which member corporations were also named as defendants. These defendant corporations came from several states, including California, which was the state of the district of suit. Plaintiff's complaint dealt with events in the years 1935 and 1936 and charged defendants with conspiring to fix prices of fireworks and to monopolize the fireworks industry. Triumph had transacted business in California, but apparently such business had been commenced subsequent to 1935–1936.[3]

In 1943 Triumph filed a certificate of withdrawal from interstate business with the California Secretary of State, which provided pursuant to state statute that Triumph would consent to service of process upon the Secretary of State in any action upon a liability incurred within the state prior to withdrawal. Plaintiff in *Giusti* duly served the California Secretary of State, but Triumph objected, contending that any liability to plaintiff was incurred not by Triumph but rather by its alleged co-conspirators. The court rejected Triumph's contention, finding that the co-conspirators were Triumph's agents and that the acts of the conspirators directed towards securing a monopoly constituted the "transaction of business".

By upholding the challenged service of process the court ruled that any liability which Triumph incurred to plaintiff through the acts of its co-conspirators *cum* agents was a liability incurred through the transaction of business within the state.[4] Triumph also raised objections to venue, but the court did not consider Clayton Act § 12 at all in determining the issue of proper venue. Rather, the court took the view that Triumph had waived all objections to venue by filing the certificate of withdrawal and by designating an agent for the service of process.

The *Giusti* case has generated a great deal of confusion among later courts both as to what in fact that case stands for and whether or not the case is at all viable in the light of certain pronouncements in the Supreme Court decision of Banker's Life & Cas. Co. v. Holland, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953). The latter point of confusion has given rise to a controversy within a controversy, viz., whether the co-conspirator theory is based upon mere "dictum" in *Giusti,* with *Banker's Life* being the "clear pronouncement" on the matter, or whether *Giusti* states the "rule" and any contrary implications from *Banker's Life* are only "dictum," or whether the language of *both* cases is just dicta and we are met with the metaphysical task of balancing court of appeals dictum with Supreme Court dictum.

Although courts in other circuits have been split on the propriety and applicability of the co-conspirator theory suggested by *Giusti,* by far the weight of recent authority has rejected or disapproved the rationale of *Giusti.*[5] The

---

3. See Independent Productions Corp. v. Loew's, Incorporated, 148 F.Supp. 460, 464 (S.D.N.Y.1957).

4. See State of West Virginia v. Morton International, Inc., 264 F.Supp. 689, 692 (D.Minn.1967).

5. The following cases have followed the *Giusti* case insofar as they have recognized the co-conspirator theory as being available in the antitrust context: Gem Corrugated Box Corporation, *supra,* 189 F.Supp. at 586; Riss & Company, *supra,* 159 F.Supp. at 295. *See generally* Recent Cases, "Venue—Clayton Act," 41

Minn.L.Rev. 837, 840 (1957); Recent Decisions, "Venue under the Clayton Act for Private Antitrust Suits," 9 Syr.L. Rev. 159, 161–162 (1957).

The following cases and authorities have rejected or disapproved the rationale of the *Giusti* case: H. L. Moore Drug Exchange, Inc. v. Smith, Kline & French Lab., 384 F.2d 97, 98 (2d Cir. 1967); Bertha Building Corp. v. National Theatres Corp., 248 F.2d 833, 836 (2d Cir. 1957), cert. den., 356 U.S. 936, 78 S.Ct. 777, 2 L.Ed.2d 811 (1958); ABC Great States, Inc., *supra,* 310 F. Supp. at 743; Friends of Animals, Inc.

district courts in the Ninth Circuit have continued to follow their understanding of Giusti, if somewhat reluctantly.[6] Even were this court to give full credence to a superficial view of the Giusti doctrine, it is far from obvious that only one result would be possible in the instant case. In regard to the question of venue, it is clear from the discussion above that the court in Giusti did not discuss the matter, and the Ninth Circuit has yet to rule authoritatively on the applicability of Giusti to the determination of venue, expressly reserving such resolution when faced with the question in Hayashi v. Red Wing Peat Corporation, 396 F.2d 13, 15 (9th Cir. 1966) and in American Concrete Agr. Pipe Ass'n v. No-Joint Con. Pipe Co., 331 F.2d 706, 710 (9th Cir. 1964). See State of West Virginia, supra, 264 F.Supp. at 692; Independent Productions Corp., supra, 148 F.Supp. at 466.

Even on the question of service of process, Giusti does not dictate a result in this action. First, a close reading of Giusti indicates that the court there did not purport to lay down a sweeping rule of conspiracy doctrine in order to bring any and all within its net in the name of the antitrust laws. On the contrary, the court was emphatic that the *business*

of the co-conspirators in carrying out their plans was itself such transaction of business as to make the defendants amenable to suit in California.

Second, even if *Giusti* does stand squarely and unambiguously for a co-conspirator approach to service of process in antitrust cases, it held no more than that (1) *corporations* can be vulnerable to service under the co-conspirator theory when (2) the law of the state which would authorize such service has been complied with. Neither facet has been satisfied in the instant action; these defendants are individuals, not corporations, and the applicable California statutory scheme for service upon these individuals has not been met. In *Giusti* the only state statutes under consideration were Cal.C.C.P. §§ 406 and 411 and the necessary requirements thereunder had been satisfied. Here, however, the statutes in question are Cal.C.C.P. §§ 412, 413, and 417, and as indicated above, their requirements have not been satisfied.

Accordingly, *Giusti* will not suffice to validate the service of process attempted to be made on these defendants

■ Clippers forwards one final argument in order to uphold the service of

v. American Veterinary Med. Ass'n, 310 F.Supp. 620, 624 (S.D.N.Y.1970); Philadelphia Hous. A., *supra*, 309 F.Supp. 1053, 1056–1057, reaffirming rejection of *Giusti* in Philadelphia Hous. Auth., *supra*, 291 F.Supp. 262; Albert Levine Associates, *supra*, 309 F.Supp. at 461; State of West Virginia, *supra*, 264 F. Supp. at 692–695; Roberts Brothers, Inc. v. Kurtz Bros., 231 F.Supp. 163, 166–167 (D.N.J.1964); Interamerican Refining Corp. v. Superior Oil Co. of Venezuela, 224 F.Supp. 35, 36 (S.D. N.Y.1963); Ohio-Midland Light and Power Co. v. Ohio Brass Company, 221 F. Supp. 405, 408 (S.D.Ohio 1962); Intermountain Ford Tractor S. Co. v. Massey-Ferguson Ltd., 210 F.Supp. 930, 933 (D. Utah 1962), aff'd, 325 F.2d 713 (10th Cir. 1964), cert. den., 377 U.S. 931, 84 S.Ct. 1334, 12 L.Ed.2d 296 (1964); Commonwealth Edison Co. v. Federal Pacific Electric Co., 208 F.Supp. 936, 941–942 (N.D.Ill.1962); Bruner v. Republic Acceptance Corporation, 191 F.Supp. 200,

205 (E.D.Ark.1961); Goldlawr, Incorporated, *supra*, 169 F.Supp. at 684; Independent Productions Corp., *supra*, 148 F.Supp. at 446–466; Westor Theatres v. Warner Bros. Pictures, 41 F.Supp. 757, 761–762 (D.N.J.1941); Tiffany Records, Inc. v. M. B. Krupp Distributors, Inc., 276 A.C.A. 728, 737, 81 Cal.Rptr. 320 (1969); P. D. Byrnes, "Bringing the Co-Conspirator Theory of Venue Up-To-Date and into Proper Perspective," 11 Antitrust Bull. 889 *passim* (1966); Note, "Venue in Private Antitrust Suits," 37 N.Y.U.L.Rev. 268, 290–294 (1962).

6. *See* Steiner v. Twentieth Century-Fox Film Corporation, 140 F.Supp. 906, 907–908 (S.D.Cal.1953); De Golia v. Twentieth Century-Fox Film Corporation, 140 F.Supp. 316, 317–318 (N.D.Cal.1953); Haleiwa Theatre Co. v. Forman, 37 F. R.D. 62, 64–65 (D.Hawaii 1965); State of California v. Brunswick Company, 32 F.R.D. 36, 38 (N.D.Cal.1961).

process against individual defendants Woosnam, Toye, and McGuire (but not Flamhaft). Woosnam, Toye, McGuire and defendant Woods are members of the International Games Committee which committee Clippers contends to be an unincorporated association, thus rendering its members amenable to service in accordance with the rules governing service on members thereof.

While it is true that the members of an unincorporated association may be individually liable for their acts,[7] we need not reach that question, for we are convinced that the International Games Committee is just what it purports to be, a committee and not an unincorporated association.

In determining whether the International Games Committee is an unincorporated association, we look to the law of the state which "created" it. *See* Sanchez v. Bowers, 70 F.2d 715, 717 (2d Cir. 1934). The law of New York, that state under which the International Games Committee was "created," tells us that an unincorporated association is,

> [A]n organization composed of a body of persons united without a charter for the prosecution of some common enterprise. Meinhart v. Contresta, 194 N.Y. S. 593, 594 (Sup.Ct. Spec.Term 1922).

*See also* Martin v. Curran, 303 N.Y. 276, 101 N.E.2d 683, 685 (Ct.App. 1951); Heifetz v. Rockaway Point Volunteer Fire Dept., 282 App.Div. 1062, 126 N.Y. S.2d 604 (1953), aff'g 124 N.Y.S.2d 257, 260 (Sup.Ct. Spec.Term 1953). This definition is in agreement with that generally used in state and federal courts throughout the United States. *See* Hecht v. Malley, 265 U.S. 144, 157, 44 S.Ct. 462, 68 L.Ed. 949 (1924); Penrod Drilling Company v. Johnson, 414 F.2d 1217, 1222 (5th Cir. 1969); Yonce v. Miners Memorial Hospital Ass'n, 161 F.Supp. 178, 186 (W.D.Va.1958); 6 Am. Jur.2d Associations and Clubs § 1 at 429–430.

Here, however, we have only the most informal and transitory of organizations. Although the International Games Committee was a standing committee of USSAF even prior to the execution of the April, 1968, agreement, it has no charter, by-laws or articles, no office or place of business, no mailing address, no bank account, no assets or obligations, and has never transacted any business. In fact, it appears that this committee has never even met. Accordingly, we find that the International Games Committee is not an unincorporated association and that defendants Woosnam, Toye and McGuire are not amenable to service of process in the instant action by reason of their membership in said committee.

In reaching this conclusion we are aware that it is the reality of the functions performed by a group and not its formal title which is dispositive of its legal status; certainly, even a so-called committee may be an unincorporated association in the eyes of the law. *See* Rosen v. Alleghany Corporation, 133 F. Supp. 858, 867 (S.D.N.Y. 1955); Lawson v. Clawson, 177 Md. 333, 9 A.2d 755, 759 (Md.1939). Despite Clippers' contentions, we do not find that the International Games Committee is an unincorporated association, nor does it appear to be an attempt to immunize an arrangement designed to stifle competition by adopting a membership scheme aimed at accomplishing that purpose. See Associated Press v. United States, 326 U.S. 1, 19, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945).

B. *To Dismiss Complaint for Improper Venue*

As the above-cited authorities indicate, the specific venue provisions of Clayton Act § 12 are inapplicable to these individual defendants. The general venue provision of Clayton Act § 4 is likewise inapplicable since these defendants neither "reside," nor are "found," nor have an "agent" within this district, nor have they ever had such contacts in this dis-

---

7. *See* Cox v. Government Employees Ins. Co., 126 F.2d 254, 256 (6th Cir. 1942); Wilson & Co. v. United Packinghouse Wkrs. of America, 181 F.Supp. 809, 815– 816 (N.D.Iowa 1960); 6 Am.Jur. Associations and Clubs §§ 46–48, and cases cited therein.

trict. Neither will the *Giusti* case provide a basis for laying venue against these defendants in this district for the reasons given above.

■ Venue is properly laid in this district, however, under 28 U.S.C. § 1391 (b) for the same reasons which made that statute applicable to the determination of venue as against NASL.[8]

### III. *Conclusion*

For the reasons given above, we hold the following:

(1) The motion of defendant NASL to quash service is denied and the motion of defendant NASL to dismiss the complaint as to it for improper venue is denied.

(2) The motions of individual defendants Woosnam, Toye, McGuire, and Flamhaft to quash service are granted, and the motions of individual defendants Woosnam, Toye, McGuire, and Flamhaft to dismiss the complaint as to them for improper venue are denied.

The court has further determined, upon the suggestion of the parties, that a certification permitting an interlocutory appeal pursuant to 28 U.S.C. § 1292 would be provident as respects certain issues in this case. Accordingly, the court is of the opinion that the within order involves the following controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from said order may materially advance the ultimate termination of this litigation:

(A) Whether or not service of process was validly made upon individual defendants Woosnam, Toye, McGuire, and Flamhaft by virtue of the co-conspirator theory of the *Giusti* case; and whether or not service of process was validly made upon individual defendants Woosnam, Toye, and McGuire by reason of their membership in the International Games Committee;

(B) Whether or not venue is properly laid in the Northern District of California as against individual defendants Woosnam, Toye, McGuire, and Flamhaft by reason of the co-conspirator theory of the *Giusti* case.

It is so ordered.

8. There is no requirement that amenability to service of process and amenability to venue must be coextensive. Congress has provided a broader test in Clayton Act § 12 for venue than for service, thus contemplating that venue might well be proper in a district where service is not. See Flank Oil Co. v. Continental Oil Co., 277 F.Supp. 357, 359 (D.Colo.1967) ; Abrams v. Bendix Home Appliances, 96 F.Supp. 3, 5 (S.D.N.Y.1951) ; Bowles v. Edwards Mfg. Co., 57 F.Supp. 887, 890 (S.D.N.Y.1944) ; Interstate Commerce Commission v. A. W. Stickle & Co., 36 F.Supp. 782, 784 (E.D.Okla.1941).