**PROJECT BASIC TENANTS UNION, Plaintiff,**

v.

**RHODE ISLAND HOUSING AND MORTGAGE FINANCE CORPORATION, et al., Defendants.**

Civ. A. No. 85–0131.

United States District Court,
D. Rhode Island.

June 5, 1986.

John W. Dineen, Michael V. Milito, Providence, R.I., for plaintiff.

William P. Robinson III, Michael DiBiase, Edwards & Angell, Providence, R.I., for defendant R.I. Housing.

Elizabeth A. Del Padre, Office of Atty. Gen., Providence, R.I., for defendant State of R.I.

Herbert DeSimone, Sr., Providence, R.I., for defendant DiPrete.

Faith A. LaSalle, Asst. City Sol., Providence, R.I., for defendant City of Providence.

Donald S. Ianazzi, Providence, R.I., for defendant Cianci.

John Tramonti, Providence, R.I., for defendant Ralph Pari.

Michael T. Robinson, HUD Office of Litigation, Washington, D.C., for defendant Dept. of Housing and Urban Development.

Michael P. Iannotti, Asst. U.S. Atty., Providence, R.I., for U.S.

## OPINION

FRANCIS J. BOYLE, Chief Judge.

Plaintiff, Project Basic Tenants Union, sues Rhode Island Housing Mortgage Finance Corporation ("RIHMFC"), the City of Providence, the State of Rhode Island, the United States Department of Housing and Urban Development ("HUD"), and certain named City and State officials and ex-officials. It alleges that Defendants have violated federal law by adopting and promulgating racially discriminatory housing practices, in the City of Providence generally and in the Silver Lake area specifically. Defendants have moved to dismiss the action on the ground that Plaintiff lacks both the capacity and standing to sue. The Court heard argument and reserved decision. For reasons detailed below, the Court holds that Plaintiff has the capacity to sue and has standing as to some Defendants. The Plaintiff lacks standing as to other Defendants. The motions of Defendants RIHMFC, State of Rhode Island, City of Providence and HUD are denied. Those of the individual Defendants, Mayor Paolino, Governor DiPrete, Councilman Stravato, Commissioner Pisaturo, former Mayor Cianci and Ralph Pari, are granted.

## I.

Plaintiff is an association of individuals who seek to rectify perceived inequalities in Providence housing.[1] It has two self appointed chairpersons, and no set number of members. Membership in the association generally consists of lessees in public and private housing. Membership is voluntary, based on consistent attendance at association meetings. Project Basic Tenants Union operates under the umbrella of the John Hope Settlement House, a neighborhood community center which provides certain social services. The Tenants Union has no budget or bank account apart from that of the Settlement House. In fact, it is an association under the group known as Project Basic, an apparently more formal association within the Settlement House. Project Basic is also financially dependent upon the larger association. Project Basic Tenants Union is not incorporated and was not formed pursuant to any statutory authority.

In 1976, a development group known as Hillside Associates sought and received from RIHMFC financing for a federally subsidized housing project to be constructed in the Silver Lake area of Providence. As of the 1980 census, Silver Lake was the least integrated tract of the 36 Providence census tracts. At that time, the development group, through the efforts of RIHMFC, also received a commitment from HUD for federal rental subsidy for the project.

Shortly thereafter, Hillside Associates retained a builder who sought a building permit from the City of Providence. At this time, however, public objection to the Hillside Project was mounting. It is alleged that then Mayor Cianci and City Councilman Louis R. Stravato, both named Defendants, were among those speaking out against the project, and that they vowed to stop it. In 1978, the City changed its zoning in the Silver Lake area so that the project could not proceed.

Vincent J. Mesolella, owner of the targeted land in Silver Lake and organizer of Hillside Associates, challenged the City zoning change in the state courts. The Rhode Island Supreme Court ultimately sustained a Superior Court ruling which invalidated the zoning change and removed any zoning barrier to the Hillside Project.

---

1. For purposes of this Motion to Dismiss on standing grounds, the Court must accept as true allegations of the Complaint and supplemental allegations by way of affidavit, and it must view the Complaint in Plaintiff's favor. *Warth v. Seldin*, 422 U.S. 490, 501–02, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975).

*Mesolella v. City of Providence,* 439 A.2d 1370 (R.I.1982).

While the zoning issue was being resolved, HUD and RIHMFC had not terminated their financing commitments, but had held them in abeyance. Opponents of Hillside Village learned of this fact and in February of 1985 "renewed their efforts to terminate the development or have it moved to South Providence." Former Mayor Cianci allegedly rejoined the effort, and Governor DiPrete and the State allegedly urged RIHMFC and its Executive Director Ralph Pari to withdraw their financing commitment. On March 1, 1985, RIHMFC did in fact withdraw its financing commitment. HUD has confirmed that, from its standpoint, the project is still feasible.

Plaintiff alleges in substance that the policies and practices of the Defendants both generally and in relation to Hillside Village have, in a racially discriminatory manner, denied low income minorities access to open and integrated housing in the City of Providence. With respect to all non-federal Defendants, Plaintiff alleges violations of the Fair Housing Act, 42 U.S.C. § 3601, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, the civil rights laws of 42 U.S.C. §§ 1981 and 1982, the Thirteenth and Fourteenth Amendments, and the United States Housing Act, 42 U.S.C. § 1437. It alleges that the federal Defendant, HUD, in violation of the Fair Housing Act, has provided funds to Providence and Rhode Island despite known Title VIII non-compliance by the City. Plaintiff seeks damages, declaratory relief, and injunctive relief including but not limited to:

1. a direction that RIHMFC rescind its announcement withdrawing financing for Hillside Village and seek the necessary extensions of its financing commitment and HUD's reservation of funds;
2. an injunction against further opposition to the Hillside project against the named City and State officials and former Mayor Cianci;
3. a direction that the City, State and RIHMFC develop a plan to alleviate a general "imbalance in terms of geo-graphical location and elderly-family proportionality" in Providence housing; and
4. a direction that HUD withhold federal funding earmarked for Providence until the City establishes its compliance with its Title VIII obligations.

Plaintiff seeks to raise and protect the rights of certain named members of its association. By way of affidavit, Plaintiff certifies that two members, Mary-Lou Tetreault and Cassandra Plummer, are income eligible for Section 8 housing, would like to live in Silver Lake, and would apply for admission to Hillside Village if it were built. The depositions of these two individuals reveal that neither has sought any housing, let alone Section 8 housing, in at least two years, and the eligibility of each for Section 8 housing is questionable—Ms. Tetreault, because of a lack of credit worthiness, and Ms. Plummer, due to income in excess of the maximum requirement.

All Defendants question Plaintiff's standing to sue in either its own right as an organization or as representative of its members. Defendant RIHMFC raises a more basic concern—whether the Plaintiff is a legal entity capable of bringing suit at all. The Court will first address this capacity concern and then the standing questions.

## II.

At common law, an unincorporated association had no capacity to sue or be sued. *See Puerto Rico v. Russell & Co.,* 288 U.S. 476, 480, 53 S.Ct. 447, 448, 77 L.Ed. 903 (1933). However, two exceptions to this rule have developed. First, an unincorporated association may sue or be sued if the law of the forum state recognizes such capacity. 3A Moore's Federal Practice ¶ 17.25. Secondly, "a partnership or other unincorporated association ... may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States." Fed. R.Civ.P. 17(b); *see* 3A Moore's Federal Practice ¶ 17.25. Here, Plaintiff association clearly seeks to raise federal rights

and, therefore, has capacity to sue if it in fact can be characterized as an "unincorporated association."

An unincorporated association is generally defined as "a body of persons acting together and using certain methods for prosecuting a special purpose or common enterprise." *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 485 (1st Cir.), *cert. den.*, — U.S. —, 106 S.Ct. 596, 88 L.Ed.2d 575 (1985). "The common purpose or interest affords a court objective criteria by which it may ascertain the membership." *Motta v. Samuel Weiser, Inc.*, 598 F.Supp. 941, 950 (D.Me.1984), *aff'd*, 768 F.2d 481 (1st Cir.), *cert. den.*, — U.S. —, 106 S.Ct. 696, 88 L.Ed.2d 575 (1985). Associations that are not actual assemblages of people, but rather are "amorphous and attenuated ..." groups or "the most informal or transitory of organizations," have been held not to constitute unincorporated associations. *See Motta*, 768 F.2d at 486; *California Clippers, Inc. v. United States S.F. Ass'n.*, 314 F.Supp. 1057, 1067 (N.D.Cal.1970).

Project Basic Tenants Union lacks structure. It has no elected officers, no budget, no by-laws and apparently no set group of members. Yet, it has a distinct purpose and performs specific functions toward that end. Its purpose is to aid low income residents of Providence in their search for decent and affordable housing, and in addition, to assist tenants, who are or who become housed, with various problems that arise amongst tenants. The Union, through sub-committees, meet once every two months to discuss Union action. Its members knock on doors and make phone calls to make known their views and concerns, and the concerns of other members. Union members have met with City officials in an effort to improve the plight of tenants. The Union's membership is indefinite; any one willing to meet and work toward the Union's goal may join. Yet, in light of its very definite purpose and activities, the Union is clearly an actual assemblage of people, and is far from an amorphous or transitory group.

■ The Court is not persuaded by the case law cited by Defendant RIHMFC in its reply brief in support of its contention that Plaintiff lacks capacity. In *California Clippers Inc. v. United States S.F. Ass'n*, *supra*, the court, in finding that the International Games Committee was not an unincorporated association, noted that the committee had no office or place of business, had no mailing address and had not transacted any business. In *Trustees of Huntington v. Environmental Protection Agency*, 55 F.R.D. 445, 454 (E.D.N.Y.1972), the court found that the plaintiff, a group of trustees, was a "non-existent body with non-existent members." Unlike the plaintiff in *California Clippers*, Plaintiff has office space, indeed a full-time staff person; it has funding and presumably does business on its own behalf. A finding that Plaintiff or its members are "non-existent" can hardly be made here. The Court holds that the Tenants' Union is an "unincorporated association" capable of bringing suit.

It is necessary therefore to proceed to the issue of Plaintiff's standing.

### III.

### A.

The standing doctrine is one of a number of doctrines which define the "case and controversy" requirement of Article III of the Constitution. *See Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). It, along with the other "case and controversy" doctrines, ensures that federal courts hear actual controversies rather than deciding legal questions in the abstract. If a plaintiff lacks standing to redress a claimed wrong, he has not presented a "case or controversy," and an Article III court lacks subject matter jurisdiction over the suit presented. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471–476, 102 S.Ct. 752, 757–760, 70 L.Ed.2d 700 (1982).

■ To have constitutional standing a plaintiff must allege three elements. He must allege: 1) that he has suffered personal injury; 2) that the injury is fairly traceable to the defendant's allegedly un-

lawful conduct; and 3) that the injury is likely to be redressed by the requested relief. *Allen, supra,* 104 S.Ct. at 3325 (citing *Valley Forge, supra,* 454 U.S. at 472, 102 S.Ct. at 758). An organization has standing on its own behalf if it can allege that it has suffered the requisite injury. *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 378–79, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982). An organization may sue on behalf of one or more of its members if the members would themselves have standing to sue. *See Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975).

A second component of standing, the so-called "prudential component," is comprised of a number of judicially imposed limitations on the exercise of federal jurisdiction. *Allen, supra,* 104 S.Ct. at 3324–25. Among these are the rules that a party generally lacks standing to raise the rights of third parties, that a federal court will not exercise jurisdiction over a generalized grievance, and that a plaintiff must raise rights that are within the zone of protection of the statute he invokes. *Allen, supra,* at 3324–25. The Supreme Court has held that in a suit brought under the Fair Housing Act these prudential concerns need not be considered; a plaintiff need only meet the constitutional requirements. *Havens Realty Corp. v. Coleman, supra,* 455 U.S. at 372, 102 S.Ct. at 1120. Since Plaintiff's claim is based in part on the Fair Housing Act, the Court need only concern itself with the constitutional standing requirements.

Plaintiff claims both organizational injury and injury suffered by its members. Plaintiff alleges that Defendants, through their discriminatory practices, both generally and in relation to Hillside Village, have adversely affected its ability to provide effective housing assistance to its members. It alleges that its members have: 1) suffered a nine year deprivation of subsidized housing in the Silver Lake area, 2) have suffered the loss of open housing opportunities throughout the City, 3) have, through the deprivation of open housing, lost the benefits of living in an integrated community, and 4) have suffered stigmatic injury

which flows from "forcing [Union members] to interact on a daily basis under the weight of the badge of inferiority." The Court finds that Plaintiff has alleged an organizational injury, which is causally related to Defendants' alleged activities, and which the Court can redress through the requested relief. Plaintiff has standing on this basis. Therefore, the Court need not address Plaintiff's claims of injury to its members in deciding this motion.

**B.**

As for Plaintiff's claimed organizational injury, the Supreme Court case of *Havens Realty Corporation v. Coleman, supra,* is controlling. In that case, a non-profit organization, the claimed purpose of which was "to make equal opportunity in housing a reality in the Richmond Metropolitan area," sued a realty company alleging racial steering in violation of the Fair Housing Act. The challenge was to exclusionary practices with respect to one housing complex. Plaintiff's members were identified simply as "multiracial and includ[ing] 600 individuals." Three named plaintiffs were renters and residents of Richmond, Virginia. The Supreme Court held that the injury the organization alleged, namely, that defendant's steering practices had frustrated the organization "in its efforts to assist equal access to housing through counseling and other referral services," was a sufficient allegation of injury for standing purposes. *Havens Realty, supra,* at 379, 102 S.Ct. at 1124.

Plaintiff in this case alleges precisely the same type of injury. It alleges harm to its "efforts and interests ... in ... advocating for more affordable housing and more open housing opportunities throughout the City ...," Complaint ¶ 70, and interference with "its encouragement of others in the enjoyment of ... the benefits of open housing." Complaint ¶ 76. Like the plaintiff organization in *Havens,* Plaintiff alleges that the practices involving one housing complex hurt its efforts on behalf of its City-wide members. The Court finds this case and the *Havens* case indistinguishable and

holds that Plaintiff on its own behalf has alleged "distinct and palpable injury".

In opposition to Plaintiff's claim of organizational injury, Defendant RIHMFC relies on the Supreme Court's statement in *Havens* that "[w]e have not suggested that discrimination within a single housing complex might give use to 'distinct and palpable injury' ... throughout a metropolitan area." *Havens*, at 377, 102 S.Ct. at 1123. The reliance is misplaced. In making this statement, the Court was specifically addressing the ability of individuals who lived in the general area to allege sufficient injury. Similarly, the Court does not accept Defendant RIHMFC's suggestion that the rule established in *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), is controlling. The *Simon* court held that standing of an organization can not be based on an abstract concern. Based on its allegations, Plaintiff's concern is not abstract, but rather stems from the delay of a specific housing project. Defendant RIHMFC also argues that the loss of forty-two units in Silver Lake is insignificant and therefore cannot support "distinct and palpable injury" to Plaintiff. The effect of the lost units at this early stage must be resolved in Plaintiff's favor. Finally, the suggestion of the federal, state and municipal Defendants that no organizational injury is alleged is clearly in error. *See* Complaint ¶ 70, 76.

### C.

■ In addition to alleging the requisite injury, Plaintiff must allege causation and redressability. Plaintiff satisfies the causation element of standing as to RIHMFC by alleging that RIHMFC's decision to withhold funds prevented the construction of Hillside Village. A direction that RIHMFC rescind its withdrawal, relief which Plaintiff seeks, would remove this impediment to construction. Thus redressability as to RIHMFC is satisfied. RIHMFC argues that it has recently resolved to do all it can to reinstate the

mortgage loan to Hillside Associates. It argues therefore that this action, as to them, is moot. The Court has not heard the parties on mootness and therefore declines to reach this issue at this point.[2]

■ The Court finds causation and redressability as to the City and State. Plaintiff has alleged that its injury is fairly traceable to the conduct of the City and State because it has alleged that the City and State through their officials lobbied for RIHMFC's withdrawal of its financing commitment. If the Court were to order the City and State to affirmatively act to ensure that Hillside Village is built, *see Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 138 (3rd Cir.1977), *cert. den.*, *Whitman Area Improv. Council v. Resident Adv. Bd.*, 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978), there is a substantial likelihood that it will be built, for Hillside Associates have indicated their willingness to proceed. The City argues that Plaintiff has no standing as to it because it was RIHMFC and HUD which stopped financing and also because the success of the project in the future depends upon the actions of RIHMFC, HUD, and the developer. The State makes similar arguments. Plaintiff's complaint, however, alleges that the actions of RIHMFC and HUD are traceable to the lobbying efforts of the City and State, and as noted, the developer is ready to proceed. Standing to challenge a denial of housing does not require certainty that a proposed development will be built. *See Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 261–62, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977).

■ Defendant HUD's alleged involvement is a bit more attenuated than that of the City, the State or RIHMFC. Plaintiff alleges that HUD failed to condition its provision of federal funds to the City on the City's Title VIII compliance. This inaction allegedly promulgated a discriminatory housing policy in the City. It is this policy which in turn allegedly prompted City ac-

2. Indeed, mootness may be a non-issue since Plaintiff, in addition to injunctive and declaratory relief, seeks monetary relief. *See Havens*

*Realty Corp., supra,* 455 U.S. at 371, 102 S.Ct. at 1120.

tion toward Hillside Village. The First Circuit has recognized standing against HUD where HUD's failure to condition the giving of funds, and thereby its failure to meet its affirmative obligation to ensure fair housing, allegedly caused a discriminatory municipal practice. *See NAACP, Boston Chapter v. Harris,* 607 F.2d 514 (1st Cir.1979). In *NAACP,* the court recognized that injury to minority plaintiffs in being unable to locate decent, low-cost housing in an integrated neighborhood was fairly traceable to HUD's failure to perform its affirmative obligation—that is, condition disbursement of funds on city compliance with fair housing mandates. *NAACP, supra,* at 525. Plaintiff organization alleges the same injury as was alleged in *NAACP.* It, like the *NAACP* plaintiffs, seeks better housing, the only distinction being that Plaintiff seeks housing opportunities on behalf of others. Therefore, the Court concludes that causation as to HUD is properly alleged.[3] As for redressability, the *NAACP* plaintiff sought an order compelling HUD to condition grants on City compliance with housing standards. The court concluded that this relief was substantially likely to redress the housing shortage the minority plaintiffs confronted. *NAACP, supra,* at 526. This Court similarly finds that Plaintiff's complaint as to HUD meets the redressability prong. If this Court were to order HUD to condition its future disbursement of funds to Providence on city Title VIII compliance, city support for Hillside Village is more likely.

Defendant HUD raises some specific arguments against redressability. It claims in substance that the Court lacks power to grant relief against HUD and therefore that Plaintiff lacks standing. It argues first that sovereign immunity bars a grant of relief against HUD. The Supreme

Court case of *Hills v. Gautreaux,* 425 U.S. 284, 96 S.Ct. 1538, 47 L.Ed.2d 792 (1976), holds, however, that a district court has authority to require HUD to carry out the duties mandated by Title VI and Title VIII. 425 U.S. at 301–06, 96 S.Ct. at 1548–50: *see NAACP, Boston Chapter v. Pierce,* 624 F.Supp. 1083, 1085 (D.Mass.1985). The *Hills* court did not discuss sovereign immunity. HUD's second argument is that because Title VIII implies no private cause of action, Plaintiff's claim can be based solely on the Administrative Procedure Act (hereinafter "APA"). It then cites the case of *Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), for the proposition that a refusal of an agency to take enforcement action is committed to agency discretion by law and thus non-reviewable by a court under the APA. Assuming Plaintiff's only claim against HUD is under Title VIII, this Court need not decide the reviewability issue at this point. Under *Hill,* the Court has subject matter jurisdiction. *Pierce,* 624 F.Supp. at 1085–86. Indeed, the standing question goes to the Court's subject matter jurisdiction. The rule of *Chaney* is concerned with whether a plaintiff has stated a cause of action upon which relief can be granted. *Railway Labor Exec. Ass'n v. Dole,* 760 F.2d 1021, 1023 (9th Cir.1985); *see Chaney, supra,* 105 S.Ct. at 1659 (agency decision not to institute proceedings not judicially reviewable under APA). No 12(b)(6) motion is currently before the Court.

▮ The final question this Court must address is causation and redressability with respect to the individuals named in the Complaint. The following are named: Ralph Pari, former director of RIHMFC, Mayor Paolino, City Councilman Stravato, City Public Safety Commissioner Pisaturo,

---

**3.** Defendant HUD cites the recent case of *Ohio Fair Housing Congress v. Pierce,* 639 F.Supp. 215 (D.Ohio 1986), a case in which the district court found no injury or causation as to HUD or the State of Ohio. The court ruled that because the plaintiff had not alleged that a discriminatory practice of HUD or the State had caused a drain on plaintiff organization's resources, it had not alleged that its organizational injury was fairly traceable to defendants' actions. *Pierce* at

218–19. The *Pierce* court refused to find that a failure to enforce housing regulations could cause injury in fact to plaintiff organization. The Court finds this decision inconsistent with the First Circuit's ruling in *Harris* and therefore declines to follow it. The *Harris* court specifically ruled that the requisite injury can result from a failure to enforce fair housing regulations.

**1462**

Governor DiPrete, and former Mayor Cianci. In essence, Plaintiff's contention is that each individual at one time or another spoke out against the Hillside Village project thereby contributing to its being halted. It further alleges that the individuals fueled a pattern or practice of discrimination which caused housing shortages and therefore its organizational injury. The Court must at this juncture accept the allegation that the individuals involved opposed the project. The Court, however, can not accept the further allegation that the outcries of these individuals caused the Hillside Village delay. Housing in the City of Providence and the State of Rhode Island is presumably controlled by bodies of individuals, such as the City Council, RIHMFC and the State legislature, not individuals themselves. Plaintiff cites no legal authority which empowers the governor, the mayor or individual government officials to effectuate or halt housing plans. Moreover, if discriminatory policy and practices pervaded the City, State and RIHMFC, the City, State and RIHMFC are the proper parties. The Court finds a lack of causation as to all individual Defendants. The Court further notes that Plaintiff cites no authority which would exclude from First Amendment protection public speeches against proposed housing projects. Having found no causation as to the individual Defendants, the redressibility concerns with respect to these Defendants need not be addressed.

### IV.

In sum, the Court finds standing as to Defendants City of Providence, State of Rhode Island, RIHMFC, and HUD. It finds no standing as to Mayor Paolino, Governor DiPrete, Councilman Stravato, Commissioner Pisaturo, former Mayor Cianci or Ralph Pari. The Court holds that Plaintiff has alleged sufficient organizational injury to support Article III standing. It holds that both the causation and redressability elements of standing are satisfied only as to the City, the State, RIHMFC, and HUD. Thus, the Motions to Dismiss of Defendants City of Providence, State of Rhode Island, RIHMFC, and HUD

are denied. The motions of Mayor Paolino, Governor DiPrete, Councilman Stravato, Commissioner Pisaturo, former Mayor Cianci and former RIHMFC director Ralph Pari are granted, and Plaintiff's Complaint as to these Defendants is dismissed.