**FOUR WAY PLANT FARM, INC., et al., Plaintiffs,**

v.

**NCCI, et al., Defendants.**

**Civ. A. No. 94–A–1324–N.**

United States District Court, M.D. Alabama, Northern Division.

July 25, 1995.

**1540**

Jere L. Beasley, Lowell Landis Sexton, Frank M. Wilson, P. Leigh O'Dell, Beasley, Wilson, Allen, Main & Crow, P.C., Montgomery, AL, for plaintiffs Four Way Plant Farm, Inc., McDonald Const. Co., Inc., Walker Logging Co. Inc., Individually and on Behalf of All Others Similarly Situated as More Specifically Alleged in the Complaint.

Walker Percy Badham, III, Maynard, Cooper & Gale, P.C., Birmingham, AL, Kevin J. Arquit, John A. Karaczynski, Guy C. Quinlan, Gary Carney, Rogers & Wells, New York City, for defendants National Council on Compensation Ins., Nat. Workers' Compensation Reinsurance Pool, Liberty Mut. Ins. Co., Robert E. Maxwell, Jr.

Sydney R. Prince, III, Dennis Patrick McKenna, Prince, McKean, McKenna & Broughton, Mobile, AL, Maureen McGuirl, Leslye Fraser, Gibson, Dunn & Crutcher, Los Angeles, CA, for defendant Liberty Mut. Ins. Co.

Richard Henry Sforzini, Jr., Sirote & Permutt, P.C., Montgomery, AL, J. Mason Davis, Sirote & Permutt, Birmingham, AL, Mark F. Horning, Merritt R. Blakeslee, Anthony J. LaRocca, Steptoe & Johnson, Washington, DC, for defendant Aetna Cas. and Sur. Co.

Robert A. Huffaker, Charles A. Stakely, Jr., Rushton, Stakely, Johnston & Garrett, Montgomery, AL, Stanley B. Block, Vedder, Price, Kaufman & Kummolz, Chicago, IL, for defendant Fidelity and Cas. Co. of New York.

Horace G. Williams, Law Offices of Horace Williams, Eufaula, AL, James R. Safley, Linda S. Foreman, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, William H. Stanhope, Sheri L. Gates, Atlanta, GA, for defendant Employers Ins. of Wausau.

Harry Cole, John M. Milling, Jr., Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, William M. Hannay, Andrew C. Porter, Edward J. Wong, III, Schiff, Hardin & Waite, Chicago, IL, for defendants Hartford Acc. and Indem. Co., Hartford Underwriters Ins. Co.

James W. Gewin, John E. Goodman, Michael R. Pennington, Bradley, Arant, Rose & White, Birmingham, AL, Richard G. Parker, Jeffrey Kilduff, O'Melveny & Myers, Washington, DC, for defendant Ins. Co. of North America.

Warren B. Lightfoot, Sabrina Andry Simon, Lightfoot, Franklin, White & Lucas, Birmingham, AL, Leon R. Goodrich, Bradley G. Clary, Oppenheimer, Wolff & Donnelly, St. Paul, MN, for defendant St. Paul Fire and Marine Ins. Co.

Thomas S. Lawson, Jr., James N. Walter, Jr., Capell, Howard, Knabe & Cobbs, P.A., Montgomery, AL, for defendant Travelers Ins. Co.

Charles M. Crook, M. Roland Nachman, Jr., Balch & Bingham, Montgomery, AL, Lewis A. Noonberg, David H. Bamberger, Piper & Marbury, Washington, DC, for defendant U.S. Fidelity and Guar. Co.

Deborah Alley Smith, Thomas A. Carraway, Rives & Peterson, Birmingham, AL, for defendant Hanover Ins. Co.

Robert S. Vance, Jr., Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, AL, for defendant Granite State Ins. Co.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

## INTRODUCTION

Plaintiffs Four Way Plant Farm, Inc., McDonald Construction Co., and Walker Logging Co., Inc., ("Plaintiffs") brought this ac-

tion in the Circuit Court for Bullock County, Alabama. They sued individually and also alleged a class action on behalf of other similarly situated Alabama employers who purchased workers' compensation insurance in Alabama since January 1, 1985.[1] In their complaint plaintiffs claimed under the antitrust law of Alabama, Ala.Code §§ 8–10–1 *et seq.* and § 6–5–60, that defendants engaged in a price-fixing scheme in connection with assigned risk workers' compensation insurance. They specifically stated that they asserted no federal cause of action and that they alleged no violation of federal antitrust laws, and they explicitly waived any potential federal claims they might have.

Defendants are National Council on Compensation Insurance ("NCCI"), an insurance rating organization;[2] National Workers' Compensation Reinsurance Pool ("National Pool"), a name given to the group of insurance companies which have contracted together to provide insurance to the residual market and reduce the risks associated with these policies; Robert J. Maxwell, Jr., ("Maxwell") a salaried employee of NCCI, Director of Government, Consumer, and Industry Affairs for NCCI's Southern Region, and an Alabama resident; and numerous named and fictitious insurance companies doing business in Alabama.

Alabama employers employing more than three persons are required to obtain workers' compensation insurance. Three manners of obtaining such coverage exist: (1) purchase the insurance in the "voluntary" market from an insurer licensed to create such a policy, (2) purchase the insurance from the "assigned risk" or "residual" market from an insurance company which is one of the servicing carriers joined together as National Pool, or (3) self-insure if the employer meets certain prerequisites.

Plaintiffs assert that defendants have engaged in a conspiracy of price-fixing and other antitrust violations under Alabama law which artificially inflate the cost of premiums in the residual market.

Defendants removed the case to the federal district court alleging federal question jurisdiction and federal diversity jurisdiction.[3] Plaintiffs filed a motion to remand the case to the state court.

Defendants allege two grounds for federal question jurisdiction: plaintiffs' claim is actually federal in nature and plaintiffs have engaged in artful pleading in an effort to evade federal jurisdiction, and plaintiffs cannot waive potential federal claims when they assert representation on the part of a class, albeit a class not yet certified. Defendants base diversity jurisdiction on two arguments: defendant Maxwell, an Alabama citizen, is fraudulently joined, and defendant National Pool, alleged by plaintiffs to be an unincorporated association with Alabama citizen mem-

---

**1.** Excluded from the purported class are defendants and their subsidiaries and affiliates and self-insured employers for the time periods that they were self-insured.

**2.** Maxwell Aff. at ¶ 3 describes NCCI as follows:

NCCI is a non-profit corporation and a licensed rating organization for workers' compensation insurance. NCCI engages in rate-making related activities which assist insurers writing workers' compensation business. In Alabama, NCCI also serves as the Administrator of the Workers' Compensation Insurance Plan, the state-approved and regulated structure by which Alabama employers unable to obtain workers' compensation insurance in the voluntary market can apply for and obtain such insurance.

**3.** 28 U.S.C. § 1441 (1994) states:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

bers, is not a suable entity but is merely a contractual reinsurance mechanism, thus diversity jurisdiction exists.

The court holds that there is neither federal question jurisdiction nor federal diversity jurisdiction, thus plaintiffs' motion to remand is due to be GRANTED.

## MOTION TO REMAND STANDARD

■ The plaintiff is the master of the complaint and at liberty to choose federal or state jurisdiction. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). A defendant seeking removal has the burden of demonstrating that the district court has jurisdiction. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.1989). The removal statute is interpreted strictly with remand being favored when removal jurisdiction is in doubt. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir.1994).

## FEDERAL QUESTION JURISDICTION

Defendants contend that federal question jurisdiction exists because plaintiffs' claims are federal in nature in spite of the fact that the complaint specifically disavows any federal claim and restricts the plaintiffs' claims to alleged violation of state statutes. Defendants argue that plaintiffs' efforts to deny them a federal forum for what are essentially federal claims cannot succeed for two reasons discussed hereafter.

### Artful Pleading

■ The doctrine of artful pleading, recognized by the Supreme Court in *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981), is a narrow exception to the rule that the plaintiff is the master of his or her complaint. Artful pleading occurs when a plaintiff, in an attempt to avoid federal jurisdiction, characterizes a claim as a state claim when the real nature of the claim is federal. The doctrine applies in two categories of cases.[4]

In the first category, plaintiff brings a cause of action in federal court and loses. The plaintiff then brings a similarly or identically worded complaint in state court. The defendant removes the case to federal court and moves for summary judgment or dismissal based on res judicata. The district court finds that removal jurisdiction exists because the "real nature" of the claim is federal. *See, e.g., Federated Dep't Stores*, 452 U.S. at 396–97 & n. 2, 101 S.Ct. at 2426–27 & n. 2 (history of the case). The instant case clearly does not fall into this category since the plaintiffs have not brought their claims in federal court at any prior time.

In the second category of cases where artful pleading applies, the claim brought by plaintiff in state court is based on subject matter that is preempted by federal law. *See Caterpillar, Inc.*, 482 U.S. at 393, 107 S.Ct. at 2430; *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *King Provision Corp. v. Burger King Corp.*, 750 F.Supp. 501, 504 (M.D.Fla.1990). *See also Shaw v. Dow Brands, Inc.*, 994 F.2d 364 (7th Cir.1993) (held that federal law preempted state law, thus removal was proper); *Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754 (2d Cir.) (citing preemption cases as the paradigm of artful pleading), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986); *In re Carter*, 618 F.2d 1093, 1101 (5th Cir.1980) ("[T]he accepted rule in this circuit is that upon removal the removal court should inspect the complaint carefully to determine whether a federal claim is necessarily presented, even if the plaintiff has couched his

---

**4.** It has been argued that artful pleading applies whenever the plaintiff is deliberately trying to deny the defendant federal court jurisdiction. This overly broad interpretation of the exception of artful pleading directly contradicts the doctrine that the plaintiff is the master of his or her complaint and may deliberately choose to base the claims on state law. *See King Provision Corp. v. Burger King Corp.*, 750 F.Supp. 501, 505–06 & nn. 3–5 (M.D.Fla.1990). *See generally* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3722, pp. 266–76 (2d ed.1985).

pleading exclusively in terms of state law."), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981); *Salveson v. Western States Bankcard Ass'n,* 525 F.Supp. 566, 572–73 (N.D.Cal.1981) ("[I]f the subject matter of the claim has been preempted, there is no room for the assertion of a claim under state law."), *aff'd in part, rev'd in part,* 731 F.2d 1423 (9th Cir.1984). *Compare Cheshire v. Coca–Cola Bottling Affiliated, Inc.,* 758 F.Supp. 1098, 1100 (D.S.C.1990) ("Federal question [jurisdiction] does not exist simply because the subject matter of the action could give rise to a federal law claims [sic] as well as a state law claim."). Defendants here in effect argue that this case falls into this second category because, they assert, the commerce engaged in was interstate commerce, not intrastate commerce, and Alabama antitrust laws do not apply to insurance.

■■■ Defendants' argument that plaintiffs engaged in interstate commerce is a defense and does not itself create federal jurisdiction. *Caterpillar, Inc.,* 482 U.S. at 392–93, 107 S.Ct. at 2429–30; *Metropolitan Life Ins. Co.,* 481 U.S. at 63, 107 S.Ct. at 1546; *Gully v. First Nat'l Bank,* 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936) ("[T]he controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal."). *See also Anziulewicz v. Bluefield Community Hosp., Inc.,* 531 F.Supp. 49 (S.D.W.Va.1981) (action brought under state antitrust laws in which the court held that the issue regarding whether requested relief was available under state law was an issue the state court could decide and no artful pleading occurred). Federal antitrust laws are not intended to preempt state antitrust laws. "[U]nlike other federal statutory schemes that preempt state regulation, the federal antitrust laws do not impinge on the jurisdiction of state courts to adjudicate claims asserted under state antitrust laws." *Salveson,* 525 F.Supp. at 574. *See also California v. ARC America Corp.,* 490 U.S. 93, 103–06, 109 S.Ct. 1661,

1666–67, 104 L.Ed.2d 86 (1989) (antitrust regulation is not exclusively within the federal domain); *Cheshire,* 758 F.Supp. at 1100 (Congress does not intend to occupy the area of antitrust exclusively); *King Provision Corp.,* 750 F.Supp. at 504 (the area of antitrust is not preempted by federal law). *Compare Caterpillar, Inc.,* 482 U.S. at 393–94, 107 S.Ct. at 2430 (citing ERISA and LMRA as examples of federal preemption).

Whether the Alabama antitrust statutes do not include insurance within the definition of "commerce," as is alleged by the defendants, is an issue the Alabama court can decide. "Plaintiff has deliberately chosen to rely upon state law and remedies provided [by state law]; if by doing so plaintiff cannot avail himself of a remedy arguably available under federal law, then so be it." *Anziulewicz,* 531 F.Supp. at 51. This question alone does not create federal jurisdiction. *See id.* at 53 ("Federal question jurisdiction cannot exist when the basic issues require interpretations of state statutory and constitutional provisions."). *See also Caterpillar, Inc.,* 482 U.S. at 392–93, 107 S.Ct. at 2429–30; *Metropolitan Life Ins. Co.,* 481 U.S. at 63, 107 S.Ct. at 1546; *Gully,* 299 U.S. at 113, 57 S.Ct. at 98.

Contrary to defendants' contentions, the doctrine of artful pleading is not broader than the two exceptions listed above. Defendants rely heavily upon *In re Wiring Device Antitrust Litigation,* 498 F.Supp. 79 (E.D.N.Y.1980), declaring it to be directly on point. However, the case is distinguishable. First, the district court held that federal diversity jurisdiction existed, therefore its discussion of whether federal question jurisdiction existed is arguably mere dicta. Second, more than thirty other cases alleging the same price-fixing scheme were brought in federal court pursuant to the federal antitrust laws. In the instant case, there have been no prior claims brought in federal court. *See also King Provision,* 750 F.Supp. at 506 n. 5. Likewise, the other cases relied upon by defendants either fall into one of the two

exceptions[5] or are distinguishable.[6]

This is simply a case of plaintiffs choosing to limit their theory of recovery to a claim under state law. They have a right to do so. If their only possible claim is actually federal, that does not mean that they will recover in state court on a federal claim; it means that they will lose their lawsuit. The court finds that federal question jurisdiction is not established under the theory of artful pleading.

### Waiver of Federal Claims by Purported Class Representatives

■ Defendants' contention that federal jurisdiction can be grounded on plaintiffs' waiver of any federal claims is without merit. Whether plaintiffs, as representatives of a presently uncertified class, can waive any potential federal claims is an issue to consider when deciding whether the class should be certified or what class should be certified. As masters of their complaint, however, plaintiffs may choose to not avail themselves of any federal law. The question for the state court is whether, while waiving any

5. *Federated Dep't Stores*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (brought state claims following the dismissal of federal claims); *Burda v. M. Ecker Co.*, 954 F.2d 434, 438 (7th Cir.1992) (district court relied on federal preemption; court of appeals relied on failure of plaintiff to state facts indicating federal jurisdiction); *Villarreal v. Brown Express, Inc.*, 529 F.2d 1219 (5th Cir.1976) (plaintiff brought state claims based on allegedly converted evidence arising from the same nucleus of facts following the settlement of the federal claims; "[t]he proper avenue of redress for a party seeking relief from a [federal] judgment claiming fraud as grounds for relief is under Fed.R.Civ.P. 60(b)(3)."); *Kahn v. Salomon Bros. Inc.*, 813 F.Supp. 191 (E.D.N.Y.1993) (federal law was a necessary element in deciding the claim, and another suit based on federal law had been brought by another plaintiff in federal court on the same nucleus of facts).

6. *Buchanan v. Delaware Valley News*, 571 F.Supp. 868 (E.D.Pa.1983) (court held that claims arose under federal antitrust law because Pennsylvania has no state antitrust statute); *Three J Farms, Inc. v. Alton Box Bd. Co.*, 1979–1 Trade Cas. (CCH) ¶ 62,423, 1978 WL 1459 (D.S.C.1978) (facts alleged by the plaintiffs were almost identical to the facts in the consolidated complaint filed in federal court in accordance with multidistrict litigation, and the complaint alleged interstate commerce), *rev'd on other grds.*, 609 F.2d 112 (4th Cir.1979), *cert. denied*, 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980). In *Mechanical Rubber & Supply Co. v. American*

potential federal claims, the plaintiffs will be satisfactory representatives of all the class members. Or, the matter may be considered in defining. the class, so that the class would not include those wishing to assert a federal antitrust claim. The waiver of federal claims does not create a federal question. *Cf. In re Romulus Community Schs.*, 729 F.2d 431 (6th Cir.1984) (in a class action lawsuit, following the removal of the case by defendants and a motion by plaintiffs to strike the federal claim from the complaint and remand the case, the district court granted plaintiffs' motion without prejudice; writ of mandamus denied and appeal of withdrawal of federal claim dismissed).[7]

## FEDERAL DIVERSITY JURISDICTION

■ Plaintiffs, who are citizens of Alabama, contend that diversity does not exist because defendant Maxwell is also an Alabama citizen and because some companies which are members of National Pool are citizens of Alabama.

*Saw & Mfg. Co.*, 747 F.Supp. 1292, *modified on other grds.*, 810 F.Supp. 986 (C.D.Ill.1990), after noting that federal antitrust laws do not preempt Illinois antitrust laws, the court looked at the merits of the case, decided that the commerce activity alleged in the complaint was interstate, and ruled that Illinois law was inapplicable "although neither of the parties have cited any law on this point and the Court has found no law on this point...." *Mechanical Rubber*, 747 F.Supp. at 1295–96. The case has been criticized within its own circuit. *See Corporate Travel Consultants, Inc. v. United Airlines, Inc.*, 799 F.Supp. 58, 60 n. 1 (N.D.Ill.1992) ("[T]his court does not believe that it would be wise to adopt the broad rule stated by the district court in *Mechanical Rubber*."). The court finds *Mechanical Rubber* to be unpersuasive.

7. The remand in *In re Romulus* was not based on § 1441 or § 1447, but rather the district court followed *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and held that in accordance with its discretion the court would remand the state claims to the state court following the dismissal of the sole federal claim. Additionally, the district court allowed the withdrawal of the federal claim without notice to the class members because the class was not yet certified " 'and may never be....' " *In re Romulus*, 729 F.2d at 440 (quoting the district court).

Defendants allege that the non-diverse defendants do not defeat federal jurisdiction. First, they contend that Maxwell, the Director of Government, Consumer, and Industry Affairs for NCCI's Southern Region, is a nominal party who is fraudulently joined. Second, they contend that National Pool is a contractual reimbursement mechanism, not an unincorporated association as plaintiffs allege. In order to establish federal diversity jurisdiction, defendants must show both that Maxwell is fraudulently joined and that National Pool is incorrectly deemed an unincorporated association.

The court finds that National Pool is an unincorporated association under Florida law and can be sued in its name under Alabama law. Thus pursuant to federal law, in which diversity jurisdiction involving an unincorporated association is based on the residency of the members, and because National Pool has member corporations incorporated and with their principal places of business in Alabama,[8] federal diversity jurisdiction is defeated. Therefore, the court will not examine the fraudulent joinder contention made by defendants regarding defendant Maxwell.

### National Pool

■ Plaintiffs assert that National Pool is an unincorporated association. In a suit based on diversity jurisdiction where the unincorporated association is sued as an entity, an unincorporated association has citizenship in any state in which one of its members has citizenship. *See* 7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1861, p. 217 (1986). Defendants argue that National Pool is a contractual reinsurance mechanism and not any type of legal entity, essentially averring that the members of National Pool have entered into a contract for their own benefits

which they refer to as the National Workers' Compensation Reinsurance Pool.

An unincorporated association has been defined as a group of persons acting together to prosecute a common purpose or enterprise. *Black's Law Dictionary* 121 (6th ed. 1990) (one of several definitions of "association"; citing *Penrod Drilling Co. v. Johnson*, 414 F.2d 1217, 1222 (5th Cir.1969)[, *cert. denied*, 396 U.S. 1003, 90 S.Ct. 552, 24 L.Ed.2d 495 (1970) ]).[9] *See also Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 485 (1st Cir.) (defining "unincorporated association"), *cert. denied*, 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 575 (1985); *Project Basic Tenants Union v. Rhode Island Housing & Mortgage Finance Corp.*, 636 F.Supp. 1453, 1458 (D.R.I.1986) (same); *Black's Law Dictionary* at 1531–32 (defining unincorporated association as, "Voluntary group of persons, without a charter, formed by mutual consent for purpose of promoting common enterprise or prosecuting common objective.") (citing *Local 4076, United Steelworkers of Am. v. United Steelworkers of Am., AFL–CIO*, 327 F.Supp. 1400, 1402 (W.D.Pa.1971)). The actual function of the group, not its formal title, determines the legal status of the group, *California Clippers, Inc. v. United States Soccer Football Ass'n*, 314 F.Supp. 1057, 1068 (N.D.Cal.1970); *Rosen v. Alleghany Corp.*, 133 F.Supp. 858, 867 (S.D.N.Y.1955), and the law of the state where the group was "created" determines whether the group is an unincorporated association. *Sanchez v. Bowers*, 70 F.2d 715, 717 (2d Cir.1934); *California Clippers*, 314 F.Supp. at 1068. To determine whether National Pool is an unincorporated association, we examine Florida law.[10]

■ Florida statutes do not define an unincorporated association and the court has

---

**8.** *See* 28 U.S.C. § 1332(c)(1).

**9.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit held as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**10.** NCCI is based in Florida with its main offices in Boca Raton, Florida. Vieweg Aff. at ¶ 3. NCCI is the administrator of the state-approved workers' compensation residual market plan.

*Id.* at ¶ 4. In certain cases, NCCI assigns employers who are unable to obtain their own workers' compensation insurance in a direct manner to a servicing carrier who issues a policy for the employer and acts like a direct carrier. However, the servicing carriers have contracted and formed National Pool which reinsures the risks, thus sharing in the risks of the insurance. *Id.* at ¶ 6. NCCI's employee, William Vieweg, is the Administrator for National Pool.

found no case law defining the term. Florida Jurisprudence defines an association as "a collection of persons who have joined together for a common objective or purpose" and states, "An unincorporated association is generally created and formed by the voluntary action of a number of individuals in associating themselves together under a common name for the accomplishment of some lawful purpose." 4 Fla.Jur.2d *Associations & Clubs* §§ 1 & 2 (1994). The former Fifth Circuit defined association as " 'a body of persons acting together, without a charter, but upon the methods and forms used by corporations, for the prosecution of some common enterprise.' " *Penrod Drilling Co.,* 414 F.2d at 1222 (quoting 7 C.J.S. Associations § 1, at p. 19). The definition of association in *Penrod Drilling* has been accepted by other courts as a definition of unincorporated association. *Committee for Idaho's High Desert v. Yost,* 881 F.Supp. 1457, 1469 n. 1 (D.Idaho 1995); *Motta v. Samuel Weiser, Inc.,* 598 F.Supp. 941, 949–50 (D.Me.1984), *aff'd,* 768 F.2d 481 (1st Cir.), *cert. denied,* 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 575 (1985); *Delta Coal Program v. Libman,* 554 F.Supp. 684, 686 n. 1 (N.D.Ga.1982), *aff'd,* 743 F.2d 852 (11th Cir.1984); *California Clippers,* 314 F.Supp. at 1068; *see also Black's Law Dictionary* at 121 (one of several definitions of association which begins, "An unincorporated society; . . . ." and cites *Penrod Drilling*). The court therefore will apply the common law definition of unincorporated association.

Under this definition, the court finds that National Pool is an unincorporated association.

■ The insurance companies participating in National Pool execute a document, Articles of Agreement, which states:

Whereas, the undersigned parties hereto . . . are engaged in the business of insuring liability under workers compensation acts . . .; and

Whereas, in addition to being participating companies they are also members of Workers Compensation Insurance Plans . . . that are in effect in various states . . .; and

\* \* \* \* \* \*

Whereas, it is desired that the premiums, losses, costs and expenses arising under certain policies issued pursuant to the Insurance Plans are covered by these Articles of Agreement be equitably distributed by means of reinsuring the policies among the participating companies so as to avoid undue loss to any one of the participating companies . . .;

We therefore, for the purpose of reinsuring such policies with such participating companies, and for the protection of each such participating company from extraordinary hazards incident to the issuance of such policies, the undersigned participating companies hereby subscribe to, become parties to, and adopt these Articles of Agreement.

Vieweg Aff., exh. A (Articles of Agreement, as amended effective January 1, 1993). In addition to the purpose described in the above quoted preamble, the Articles have a separate section titled "Purpose and Limitations" which also describes the purpose of the organization. Art. II. The Articles of Agreement delineate the procedure for electing a Board of Governors which manages and controls the operations and business of the National Pool except for those powers reserved for the Administrator. *Id.* at Art. V. In turn, the Board of Governors elects a Chair and Executive Vice–Chair. *Id.* The participating companies hold annual meetings, and the Chair of the Board of Governors has the power to call additional meetings. *Id.* at Art. IV. The National Pool is not an informal, transitory group, but rather an organized, structured group existing for the purpose of reinsuring its members against excessive losses from workers' compensation insurance policies.

National Pool, through its Articles of Agreement, has been in existence at least since 1970. Vieweg Dep. at 24. It collects the premiums due to the participating carriers and distributes the monies quarterly. Although it uses a bank account established through NCCI and the monies collected from the Alabama carriers are mingled with the monies collected from other pools, National Pool maintains an accounting system whereby it accounts for its balance. Vieweg Dep.

at 33–36, 66. The participating carriers of National Pool reimburse NCCI for expenses it incurs during the administration of National Pool. Vieweg Dep. at 30. National Pool does not have its own mailing address, but can be reached by writing to National Pool in care of NCCI. Vieweg Dep. at 54.

In *California Clippers,* the district court determined that the group at issue was not an unincorporated association, noting that the group had no charter, no bylaws, no articles, no office, no place of business, no mailing address, no bank account, no assets, and no obligations. 314 F.Supp. at 1068. The court stated, "[W]e have only the most informal and transitory of organizations.... In fact, it appears that this committee has never even met." *Id.*

In *Project Basic Tenants Union,* the court found that the union, which lacked structure and had no elected officers, no bylaws, no budget, and no set membership, was an unincorporated association because the union had a distinct purpose and acted towards meeting that purpose. 636 F.Supp. at 1458. The court stated, "Associations that are not actual assemblages of people, but rather are amorphous and attenuated groups or the most informal or transitory of organizations, have been held not to constitute unincorporated associations." *Id.* (quotation marks and citation omitted). *See also Committee for Idaho's High Desert,* 881 F.Supp. at 1463, 1469 (holding the Committee was an unincorporated association "comprised of a voluntary group of individuals who have formed and joined together over the years for the purpose of prosecuting [an environmental] common interest enterprise.").

Defendants rely on the intention of the participating carriers of National Pool and *Roby v. Corporation of Lloyd's,* 796 F.Supp. 103 (S.D.N.Y.1992), *aff'd,* 996 F.2d 1353 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 385, 126 L.Ed.2d 333 (1993), to support their contention that National Pool is not an unincorporated association. They point out that there was a change in the Articles of Agreement in 1991 to delete the designation of National Pool as an unincorporated association. The court notes, however, that no basic change was made in the organization or oper-

ation of National Pool which, until then, had been referred to by its members as an unincorporated association. The intention of National Pool, however, is irrelevant. If the group fits the definition of an unincorporated association, then it is an unincorporated association. *California Clippers,* 314 F.Supp. at 1068 (the title the group gives itself is not determinative of whether the group is an unincorporated association); *Rosen,* 133 F.Supp. at 867 (same). *Roby* is distinguishable.

In *Roby* investors in Lloyd's of London brought an action against Lloyd's syndicates, "groups of insurers-investors which are organized for the purpose of assuming insurance risks[,]" alleging violations of federal securities laws and the Racketeer Influenced and Corrupt Organizations Act. *Id.* at 103–04. The court examined the law of England where the syndicates were "created" and held that the syndicates were not legal entities and could only be sued by proceeding against all the members or against a representative member or members. *Id.* at 105–06.

Alternatively, applying New York law, the court concluded the same outcome would be reached based on legal precedent for that court and the New York statutory definition of unincorporated associations. *Id.* at 107. New York case law defines an unincorporated association as "an organization composed of a body of persons united without a charter for the prosecution of some common enterprise." *Meinhart v. Contresta,* 194 N.Y.S. 593, 594 (N.Y.Sup.Ct.1922); *see also Heifetz v. Rockaway Point Volunteer Fire Dep't,* 124 N.Y.S.2d 257, 260 (N.Y.Sup.Ct.), *aff'd,* 282 A.D. 1062, 126 N.Y.S.2d 604 (1953). The unincorporated association is not a legal entity separate from its members. *Heifetz,* 124 N.Y.S.2d at 260. However, § 13 of the New York statutes, which mandates the proper procedure for maintaining an action against an unincorporated association, states in part:

An action or special proceeding may be maintained, against the president or treasurer of such an association, to recover any property, or upon any cause of action, for or upon which the plaintiff may maintain such an action or special proceeding,

against all the associates, by reason of their interest or ownership, or claim of ownership therein, either jointly or in common, or their liability therefor, either jointly or severally. *Any partnership, or other company of persons, which has a president or treasurer, is deemed an association within the meaning of this section.* N.Y. Gen'l Ass'ns Law § 13 (McKinney 1995) (emphasis added); *see also Bobe v. Lloyd's,* 27 F.2d 340, 341 (S.D.N.Y.1927), *aff'd per curiam,* 27 F.2d 347 (2d Cir.1928) (quoted language of § 13 the same). Section 13 relaxed the common law rule which required service of process on all of the members of the association. *Crystal v. Board of Educ. of the City Sch. Dist. of the City of Long Beach,* 87 Misc.2d 632, 385 N.Y.S.2d 701, 703 (N.Y.Sup.Ct.1976).

The court in *Roby* relied on the prior decision concerning Lloyd's syndicates which held that the syndicates were not unincorporated associations pursuant to § 13 of the General Associations Law. *Roby,* 796 F.Supp. at 107 (citing *Bobe,* 27 F.2d at 345). The issue in *Bobe* was whether service of process had been obtained by serving the Lloyd's corporation as the alleged treasurer of the two syndicates, both alleged to be unincorporated associations. 27 F.2d at 341. The court held that the syndicates were not unincorporated associations "within the meaning of section 13 of the General Associations Law of the state of New York[,]" *id.* at 345, and that Lloyd's was not the treasurer for the two syndicates, *id.* at 346.

Florida law has not liberalized the common law rules of service on an unincorporated association, *see Florio v. State,* 119 So.2d 305, 309 (Fla.Dist.Ct.App.1960), thus there is no Florida equivalent to New York's § 13. Pursuant to the only definition of unincorporated association in use in Florida, *i.e.,* the broad, common law definition used in this circuit,

National Pool is an unincorporated association.[11]

■ Although the court decides that National Pool is an unincorporated association, the issue remains whether it is subject to suit in its name. To determine whether an unincorporated association is subject to suit, the court examines the law of the forum state.

■ At common law, unincorporated associations were not legal entities subject to suit. Actions against an unincorporated association had to name the individual members as defendants and serve process upon each member. This common law rule is not in effect in Alabama. Alabama Rules of Civil Procedure provide for service of an unincorporated association "by serving it in its entity name by certified mail at any of its usual places of business or by serving an officer or agent of any such organization or association or an officer or agent of any branch or local of such organization or association...." Rule 4(c)(8) (Supp.1993). *See also* Ala.Code §§ 6–7–80 to 6–7–81 (1993) (actions may be commenced by or against any unincorporated association or organization in its name). *Cf. Petrol Shipping Corp. v. Kingdom of Greece, Ministry of Commerce, Purchase Directorate,* 360 F.2d 103, 108 n. 1 (2d Cir.) (in New York, an association may not be sued in the association's name, but may be sued in the name of the president or treasurer), *cert. denied,* 385 U.S. 931, 87 S.Ct. 291, 17 L.Ed.2d 213 (1966). Therefore, defendant National Pool, an unincorporated association, can be sued and served with process in the name of the association.

■ "For purposes of diversity jurisdiction, an unincorporated association is said to have no citizenship of its own. Thus, if suit is brought by or against an association as an entity or by or against its individual mem-

---

11. If Alabama law is considered controlling, the outcome would be the same. The court has found neither a statutory definition nor a case law definition of unincorporated association in Alabama. From this, the court infers that the common law definition remains in effect. *See, e.g., Gulf South Conference v. Boyd,* 369 So.2d 553, 555 (Ala.1979) (the Gulf South Conference is an unincorporated association composed of nine colleges and universities with a stated pur-

pose and a self-imposed government of rules, bylaws, and a constitution); *League of Women Voters v. Renfro,* 292 Ala. 128, 290 So.2d 167, 168 (1974) ("[The League of Women Voters] is a non-profit, unincorporated association, the general purpose of which is to promote political responsibility."). National Pool is an unincorporated association under the common law definition.

bers, the organization's citizenship is deemed to be the same as that of its members." 7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, § 1861 at 217; *see also* 28 U.S.C. § 1332. Among the members of National Pool are corporations incorporated in Alabama and with their principal places of business in Alabama. Plaintiffs also are residents of Alabama. Therefore, diversity jurisdiction is destroyed.

## CONCLUSION

There is no federal question jurisdiction on the face of the complaint. While defendants raise questions regarding whether plaintiffs have a valid state claim, they do not meet their burden of proving that plaintiffs engaged in artful pleading.

Defendant National Pool is an unincorporated association and accordingly is a resident of every state where its members are residents. Because National Pool has members which are incorporated in Alabama and have their principal places of business in Alabama, defendant National Pool defeats federal diversity jurisdiction.

It is unnecessary to reach the contention that Maxwell was fraudulently joined, since there would be no diversity jurisdiction even if the court agreed.

Plaintiffs' motion to remand is GRANTED, and it is hereby ORDERED that this case is remanded to the Circuit Court for Bullock County, Alabama. The clerk is DIRECTED to take appropriate action to effect the remand.